## MITCHELL v. RALEIGH ELECTRIC CO.

(Filed October 29, 1901.)

1. NEGLIGENCE—*Electricity—Insulating Wires—Ordinances—Master and Servant—Employee.*

   Absence of insulation on an electric light wire, in violation of an ordinance, is *prima facie* evidence of negligence.

2. NEGLIGENCE—*Contributory Negligence—Evidence—Sufficiency—Electricity.*

   There is no evidence in this case of contributory negligence on the part of the intestate in allowing the wire he was holding to come in contact with the wire of the electric light company.

3. PRESUMPTIONS—*Negligence—Electricity.*

   It will be presumed that an electric light company had notice of an abrasion in its insulated wire where the abrasion had existed for two years.

4. NEGLIGENCE—*Proximate Cause—Contributory Negligence.*

   Where the negligence of the defendant appears, and there is no evidence of contributory negligence by the intestate, the court should charge that the negligence of the defendant was the proximate cause of the death of the intestate.

5. QUESTIONS FOR COURT—*Contributory Negligence.*

   What is contributory negligence upon a given state of facts is a question of law for the court.

   MONTGOMERY, J., dissenting.

ACTION by Sallie Mitchell, administratrix of James Mitchell, against the Raleigh Electric Company, heard by Judge *H. R. Starbuck* and a jury, at April Term, 1901, of the Superior Court of WAKE County.

This action was brought to recover against defendant company damages on account of the alleged negligent killing of intestate.

It was alleged that intestate, while at work upon the line of the Bell Telephone Company in stringing a wire upon its line across and over defendant company's wires, the wire being strung by intestate came in contact with the wire of defendant company at a point at which it had negligently permitted to remain uninsulated, and thereby became charged with electricity, which was conveyed into the body of intestate, causing his death.

From the evidence of plaintiff's witnesses, it appears that intestate was in the employ of the Bell Telephone Company on January 14, 1899. While so employed, he was assisting another employee in stringing the wires upon the poles of the said company, at or near the intersection of Edenton and Blount Streets, in the city of Raleigh. The wires of said company were supported upon poles, and were ten feet higher than the wires of defendant. Intestate was on the north side of Newbern Avenue; his fellow-employee was upon the pole on the south side; intestate had the coil of wire on his left arm or shoulder; a rope or handline had been fastened to the end of the wire, and it was passed over a limb and through some trees on the north of the street over and across defendant company's wires, and placed in the hands of the employee of the Bell Company's pole, who was drawing it to him for the purpose of stringing the wire, to which it was fastened, upon the pole upon which he had climbed. Intestate was paying out the wire through his hands, and while doing so, it came in contact with defendant company's electric wire, and he was "caught" by a current of electricity transmitted to the wire in his hands and died in a minute— before the wire was cut. Some two years before this occurrence, the witness McFarland testified that he and another man (Hicks) were putting a 'phone wire across at the same place, and while doing so (but the wire was then drawn across the *arm* of a pole) Hicks carelessly permitted it to slack and

fall across the Electric Company's wire, making an abrasion in the insulation two inches wide, and Hicks got "caught" by a current of electricity, but he immediately cut the wire and released him. This was at the same place where intestate got "caught." He had noticed the place several times in the same condition between the two accidents. Bonner, the electrician, testified that about fifteen minutes after the occurrence, he went to the place where this man was killed by a current from the wire of the defendant company's wire where the insulation had been rubbed off which was the width of a lead pencil; the Bell line was lying in the place where the insulation was rubbed off; that about two years before he had noticed a place where the insulation was rubbed off; it was within ten feet of this place; caused by a 'phone wire pulling across the electric wire; it was the same size as the place he saw there the day of the accident, and did not notice but one place which was rubbed off on that day.

Several witnesses testified that the proper way for a man who knew his business would have been to have passed the rope or hand-line and wire over the arm of a tall Bell pole and then pulled it across, thus avoiding contact with the electric wire, instead of through the trees, as was done. The ordinance of the city, which was in evidence, is as follows:

"Section 7.—All electric light and power wires, excepting trolley wires for electric railways, must be covered with a durable water-proof insulation, not less than two coatings."

After the close of plaintiff's evidence (defendant having declined to introduce any), plaintiff requested the Court to give certain special instructions, which were refused, and plaintiff excepted. Verdict was rendered for defendant, and plaintiff appealed from the judgment.

*J. B. Batchelor,* for the plaintiff.
*R. L. Gray,* for the defendant.

COOK, J. (after stating the case). The plaintiff was clearly entitled to have the instructions hereinafter discussed and prayed for, given to the jury, if not *in the exact language,* certainly in substance, which does not appear in the charge as given.

The defendant company was engaged in the business of manufacturing, producing, leasing and selling light made from the use of electricity, which is the most deadly and dangerous power recognized as a necessary agency in developing our civilization and promoting our comfort and business affairs. It differs from all other dangerous utilities. Its association is with the most inoffensive and harmless piece of mechanism, if wire can be classified as such, in common use. In adhering to the wire it gives no warning or knowledge of its deadly presence; vision can not detect it; it is without color, motion or body; latently and without sound it exists, and being odorless, the only means of its discovery lie in the senses of feeling, communicated through the touch, which, as soon as done, becomes its victim. In behalf of human life and the safety of mankind generally, it behooves those who would profit by the use of this subtle and violent element of nature to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition. Recognizing this peril to those in its use, or who, in the exercise of their liberty in passing along the streets of the city, might accidentally come in touch or contact with electric wires, or who in the management of their business affairs would have other wires suspended over the streets in close proximity to electric wires, the city authorities of Raleigh deemed it proper to require that all such wires should be covered with durable water-proof insulation. The duty imposed under this ordinance was imperative. Its strict observance was necessary for the safety of all. The electric wires *must* be insulated, and it was no less the duty

of defendant company to keep them so at all times and at all places. The nature of the mischief intended to be reme-died required it. A failure to comply with this ordinance was *prima facie* evidence of negligence, and there being no evidence in rebuttal offered by defendant company, and none appearing from the evidence of plaintiff, it was error in his Honor in refusing to give instruction No. 1 prayed for by plaintiff, viz: "If the jury find from the evidence that the defendant left its wires uninsulated, as stated by the wit-nesses, this was negligence on the part of the defendant, and the jury will so find."

In *Union Pa. Railway Co. v. McDonald,* 152 U. S., 262, the Court held that where the statute imposed a duty upon a railroad company to fence its slack-pits, its failure to do so was evidence of negligence, for which it was liable. In the case of *Clements v. La. Electric Co.,* 44 La. Ann., 692, 32 Am. St. Rep., 348, 16 L. R. A., 43, it is held by the Supreme Court of Louisiana that the failure of defendant company to have the splices on its wires perfectly insulated, when so required to do by the ordinance of the city, was negligence on its part. The ordinance being a contract with each and every inhabitant of the city, its standard of duty was fixed by it, and its failure to comply with it was negligence. Also to the same effect it is held in *Tobey v. Burlington, etc., R. Co.,* 94 Iowa, 256, 33 L. R. A., 496, and cases there cited; *Hayes v. Mich. Cent. Ry. Co.,* 111 U. S., 228:

"A company maintaining electric wires over which a high voltage of electricity is conveyed, rendering them highly dan-gerous to others, is under the duty of using the necessary care and prudence at places where others might have the right to go, either for work, business or pleasure, to prevent injury. It is the duty of the company under such conditions to keep the wires perfectly insulated, and it must exercise the utmost care to maintain them in such condition at such places. And the fact that it is very expensive or inconvenient to so insu-

late them, will not excuse the company for failure to keep their wires perfectly insulated.   So, one who, in the course of his employment, is brought into close proximity to electrical wires, is not guilty of contributory negligence by coming in contact therewith, unless done unnecessarily or without proper precautions for his safety.   And where the wires, if properly insulated, would not be a source of danger, such person is only obliged to look for patent defects and not for latent defects; and a person who touches an electrical wire from which the insulation is worn off, if he does it in ignorance of the nature and condition of the wire, is not negligent."   Joyce on Electric Law, sec. 445.

The evidence in the case at bar shows that defendant company's wires were strung on poles along the same street with those of the Bell Telephone Company.   At places, as was in this case, one set of wires diagonally crossed the other at a distance of only about ten feet.   Each had a common right, and it was the duty of each to exercise all reasonable precautions for the prevention of injury to the servants who may be sent there in the performance of duty.   Each is bound to know that the servants of the other may come in contact with its wires.   The fact that defendant company's wire was insulated, was calculated to induce intestate to rely upon its safety, even if the wire he was paying out should come in contact with it.   *Newark Electric Light Co. v. Garden,* 78 Fed., 74, 37 L. R. A., 725, 6 Am. Elec. Cases, 275.

We think his Honor also erred in refusing the third instruction prayed for, viz: "There is no evidence of contributory negligence on part of the intestate of plaintiff, and the jury will therefore find the second issue 'No.' "   What is contributory negligence upon a given state of facts, and whether there is any evidence, are questions of law for the decision of the Court; and a review of the evidence fails to discover any act *done* by the intestate which he *ought not* to have done, or the omission to do any act which he *ought* to

have done.   The witnesses testified that the proper way would
have been to have conveyed the rope or hand-line and wire
over the arm of the tall Bell pole not far off (and not through
the trees as was done), which any man who understood his
business would have done.   But it also appears from the evi-
dence that a similar accident occurred at or near the same
place when the *arm* of a pole was used and the wire carelessly
allowed to slack and fall upon the electric wire.   So, if in-
testate used a different mode to accomplish his purpose, that
act would not necessarily be negligence upon his part.   And
having undertaken to use the trees in supporting his wire
while conveying it over and across the defendant company's
wire, he had a right to presume that the electric wires were
properly insulated as required by the ordinance; and it was
his duty to look for patent defects only.   *Clements v. La.
Elec. Co., supra.*

There is no evidence to show that intestate so managed or
mismanaged his wire as to cut through the insulation of de-
fendant company's wire, nor is there any evidence to show
that the abrasion in the insulation was seen, or by due care
could have been seen by him—in extent, the evidence shows
that it varied from the width of a pencil to two inches, and
was suspended 30 feet above the street.   It does appear
that his wire came in contact with and rested upon the electric
wire, but there is no evidence to show that it caused the abra-
sion in which it rested; nor was there any evidence to show
that he knew of its existence.   The *fact* that it *was* there, and
had been for two years, and had been seen and known
to exist there for two years by at least two people (who were
witnesses in this case), the Court must presume that it was
or ought to have been known by defendant company.   So,
where an electric light company permitted a live wire to re-
main on the surface of a street for three weeks, and a traveller
was injured by contact with such live wire, it was held that

SMITH *v.* RAILROAD.

the Court would presume, after such a period, that the company had notice of the fact and was liable for the injury. Joyce, *supra,* sec. 450.

The fourth instruction asked was: "There is no evidence of any other cause of death of plaintiff's intestate, except from the electricity coming from the wire of the defendant; therefore, if the jury find from the evidence that the death of the intestate of plaintiff was caused by the current of electricity passing into his body from the charged wire of the defendant, the jury will find the third issue 'Yes' "—the third issue was, "was the negligence of the defendant the proximate cause of the death of intestate of plaintiff?"

The negligence of defendant appearing, and no evidence of contributory negligence by intestate, his Honor erred in refusing this instruction. There was evidence tending to show that intestate was killed by the electrical current, which clearly appears; and the jury should have been charged as requested.

As there will have to be a new trial, and the questions raised by the other exceptions may not again arise, we think it unnecessary to discuss them.

New trial.

MONTGOMERY, J., dissents.