(50 Misc. Rep. 388.)

MANGAN et al. v. HUDSON RIVER TELEPHONE CO. et al.

(Supreme Court, Special Term, Fulton County. May, 1906.)

1. ACTION—JOINDER OF CAUSES OF ACTION—ACTION FOR DEATH—CONCURRENT NEGLIGENCE OF DEFENDANTS.

The personal representatives of a decedent may properly join the causes of action against two or more persons through whose concurrent negligence injuries resulting in death occurred.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Action, §§ 490–496, 530.]

2. DEATH—ACTION—PARTIES DEFENDANT.

Where injuries resulting in death occurred by the concurrent negligence of two or more persons, decedent's representatives may make all joint tort-feasors defendants, or may prosecute an action against them severally.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, § 59; vol. 1, Cent. Dig. Action, § 530; vol. 45, Cent. Dig. Torts, § 29.]

**3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DEMURRER.**

The question of contributory negligence may be raised by demurrer to the complaint.

**4. ELECTRICITY—INJURY TO LICENSEE—PLEADING.**

A complaint alleged that plaintiff's intestate was free from negligence, and showed that decedent was in the employ of one of the defendants, a telephone company, and was at work on a pole owned by an electric railroad company not a party to the action, which bore a wire belonging to an electric lighting company, another defendant, having inadequate insulation and carrying a dangerous current and also a wire of the telephone company; that in transferring the telephone wire he untied the electric light wire from its insulator and when replacing it received the shock which killed him. There was no allegation that the electric light company had reason to know that any one would interfere with its wire, or that it consented to such interference, or that the wire could have been rendered harmless by any known insulation, nor any allegation that decedent was ignorant of the deficiency of the insulation, or any allegation that it was solely by reason of the defective insulation that intestate was killed. *Held,* that a demurrer by the electric light company on the ground that the complaint did not state a cause of action should be sustained.

**5. SAME.**

Where an employé of a telephone company went upon a pole to work on a telephone wire it did not imply a license to interfere with an electric light wire on the same pole owned by another company.

**6. SAME—DUTY OF ELECTRIC LIGHT COMPANY.**

An electric light company owed to a licensee or trespasser on its pole no duty to keep its wires properly insulated, and one standing in either relation to it must be held to the exercise of reasonable care.

**7. SAME—KNOWLEDGE OF DANGER.**

An employé of a telephone company is bound to consider the condition of an electric light wire carrying a deadly current before deliberately coming in contact with it.

Action by Daniel Mangan and Thomas Mangan, administrators of James Mangan, deceased, against the Hudson River Telephone Company and the Schenectady Illuminating Company. Demurrer to complaint by defendant Illuminating Company sustained.

Olmstead, Van Bergen & Canfield, for plaintiffs.

James O. Carr, for defendant illuminating company

SPENCER, J. Plaintiffs allege that their intestate was killed by reason of the concurrent negligence of the defendants. The defendant illuminating company demurs on three grounds: First, that two causes of action are improperly united; second, that there is a defect of parties defendant; and, third, the complaint does not state facts sufficient to constitute a cause of action against the demurrant.

The first ground of demurrer is held insufficient on the authority of Lynch v. Elektron Mfg. Co., 94 App. Div. 408, 88 N. Y. Supp. 70. As to the second, there are no facts alleged which justify an inference that the railroad company mentioned in the complaint was in any respect negligent or owed any duty to the plaintiff's intestate or his employer. Moreover, a plaintiff is not required to make all joint tort-feasors parties defendant. He may prosecute his action against them jointly or severally. In respect to the third ground of demurrer, the sole contention is that the facts alleged show clearly that the plain-

tiff's intestate was not free from contributory negligence. While the plaintiffs need not specifically allege the absence of contributory negligence on the part of their intestate, it is necessary that they establish this fact upon the trial, its averment being involved in the averment that his death was caused by the negligence of the defendants. Lee v. Troy Citizens' Gaslight Co., 98 N. Y. 115, 119.

In respect to this ground of demurrer, it may be said by way of preface that in the trial court contributory negligence is primarily a question of fact. It is only in rare and exceptional instances that it becomes a question of law. It is difficult to find an instance where it has been determined on demurrer. This is due to the complex character of the question. Sometimes it is a question of law, more often a question of fact, and frequently a mixed question of both law and fact. The lines of demarcation have not been clearly drawn and in many respects are still in doubt. There is, however, no reason why this question may not be determined on demurrer as well as after verdict. Certainly, in a well-drawn pleading, the facts should be more easily perceived than from the confused and sometimes incoherent testimony of witnesses. Yet courts are every day reversing verdicts in negligence actions on the ground that the evidence shows that the injured persons were guilty of contributory negligence, or have not shown themselves free from such negligence.

We are called upon by the demurrer to construe the complaint and determine what facts are alleged and what may be inferred, determine the degree of care the plaintiff's intestate should have exercised under the circumstances, and determine whether the intestate did or did not exercise such care. The first two are questions of law. As to the last, if it is reasonably clear that the intestate did not exercise such care, it is a question of law; but, if it is not clear, then it is a question of fact. If different minds would reasonably arrive at different conclusions, the court should regard the question as one for the jury. The demurrer admits all the facts alleged and all inferences which may be fairly drawn therefrom. It does not, however, admit the inferences or conclusions which the pleader has drawn from the facts.

The plaintiffs have alleged generally that their intestate was free from carelessness, but in connection therewith they have set forth the facts showing the manner by which he came to his death. In this respect the complaint is full and explicit. We must, therefore, regard the general allegation as an inference and of no effect unless sustained by the facts. The demurrer goes not only to the facts which appear, but also to those which do not appear, because pleadings usually fail on this ground of demurrer by reason of omissions and not because of imperfect allegations. It appears from the complaint that the plaintiff's intestate was in the employ of the defendant telephone company and on a pole owned by an electric railroad company not a party to this action; that near the top of the pole was a cross-arm supporting a wire belonging to demurrant, having inadequate insulation or insulation which was out of repair and carrying a current of electricity of 2,200 volts, dangerous to human life; that on said pole, some distance below the cross-arm, was a bracket carrying a wire of the telephone com-

pany; that the work which the intestate was set to do was to transfer the telephone wire belonging to his employer from its bracket to a cross-arm placed upon the pole at a point above demurrant's wire; that, for some reason not given, he separated demurrant's wire from its cross-arm by untying it from its pin and glass insulator; that afterward, and while engaged in retying and reattaching demurrant's wire to its pin and glass insulator, he received from it a shock of electricity which burned his hand and caused his death.

At this point we must note certain things which are not alleged and which may not be inferred from any allegations in the complaint, viz.: There is no allegation that demurrant knew, or had reason to know, that the intestate, or any other person not in its employ, would have occasion or necessity to interfere with its wire, or that the intestate so interfered with the demurrant's knowledge or consent. There is no allegation that a wire, charged as this was by a heavy current of electricity, could have been rendered harmless by any known insulation, nor is there any allegation that the plaintiff's intestate did not know of the insufficiency of the insulating material or that its defective character was not obvious. There is no allegation from which we can infer that it was solely by reason of the defective insulating material that the intestate was killed. The wires of both defendants were upon the same pole, supported by different cross-arms. They were thus brought into close proximity. From his situation it may be presumed that both defendants and their respective employés had the right to go upon the pole and perform such work in respect to their respective wires as might from time to time be necessary. But this right does not imply a license or permission from one defendant to the other to remove or in any manner interfere with one another's wires. If, however, an employé of one defendant, while engaged in his duties, came by inadvertence or accident into contact with the wire of the other and was thereby injured, he may not as a matter of law be said to be negligent. Whether he exercised due care or not would be a question of fact to be determined from all the circumstances. That is all that was held in Illingsworth v. Boston Electric Light Co., 161 Mass. 583, 37 N. E. 778, 25 L. R. A. 552, and Perham v. Portland Electric Co., 33 Or. 451, 53 Pac. 14, 24, 40 L. R. A. 799, 72 Am. St. Rep. 730.

As to demurrant, the plaintiff's intestate was upon the pole and engaged in work upon the demurrant's wire either as a licensee or trespasser. In either event demurrant owed him no active duty. Larmore v. Crown Point Iron Co., 101 N. Y. 391, 4 N. E. 752, 54 Am. Rep. 718. Each must be held to the exercise of reasonable care. Neither could rely upon the discharge of any active duty by the other. The plaintiff's intestate owed the duty to himself to exercise reasonable precaution. Did he exercise that care? I think the facts show that he did not.

Two causes of injury are alleged—one that the insulating material was inadequate, and the other that it was out of repair. As to the first, the fact is well known that wire employed for this purpose is a manufactured article bought and sold in the open market, and a person who uses it may not be regarded as negligent, unless it be alleged or

proven that he knew or ought to have known its inadequacy. As to the question of repair, demurrant owed no duty to the intestate to keep its wire properly insulated at the place where he received his injury. Hector v. Boston Electric Light Co., 161 Mass. 558, 37 N. E. 773, 25 L. R. A. 554. But if it did, the intestate was still charged with the exercise of reasonable care. He was a man of mature age; he was employed in connection with wires carrying electricity. If he were injured because the insulating material was not intact, such defect was as apparent to him as to the demurrant. His point of contact must have been identical with the defective place in the covering. He came in touch with it not inadvertently or from necessity, but deliberately and intentionally. He, therefore, cannot establish his freedom from negligence, unless he had a right to speculate as to whether or not the covering was defective. Can it be said that a reasonably prudent person will intentionally put himself in contact with a wire carrying a deadly current of electricity, knowing that nothing stands between himself and its deadly power save a thin and flexible layer of insulating material liable to become impaired by exposure or erosion or abrasion, without inspecting the point of contact? I think not. It is a matter of common knowledge that the best insulation is at times and under certain conditions entirely inadequate. When a person purposely puts himself in contact with such a dangerous thing, he may not be indifferent as to whether its owner has or has not done all he ought to have done. He must be held to the degree of care that is imposed upon all persons who intentionally deal with dangerous things. In this case the intestate must be regarded as knowing the purpose for which the wire was employed, the dangerous current conveyed by it, the liability of its covering becoming impaired by use and exposure or by coming in contact with hard substances, and the uncertainty of its effective operation occasioned by dampness or other causes beyond control, and, therefore, as running his chances when he put himself in contact with it without taking any active measure to determine its actual condition.

I have not failed to observe what is said in Perham v. Portland Electrical Co., supra. What is said there on this subject does not in my judgment find support either in principle or precedent. The position there taken that the intestate had a right to assume that the insulation on both wires was in all respects intact and adequate and that, therefore, he had the right in reliance upon such assumption to bring them together and so form a short circuit through his person, was not necessary to the decision. He did not intentionally do an act of that kind. The further argument there advanced that "the danger was a hidden and secret one" flies in the face of common knowledge and experience, as also does the statement that inadequate insulation is deceptive. A more reasonable view of this subject is taken in Hector v. Boston Electric Light Co., supra, where the wires of both companies were supported by standards located upon roofs of neighboring buildings. The plaintiff, an employé of one company, had occasion in the performance of his duty to go upon the roof of the building supporting the wire of the other company and was accidentally injured because its insulating material had become worn. In considering the question of plaintiff's care, the court said:

"We doubt if the plaintiff offered sufficient evidence that he was in the exercise of due care at the time and place of the accident. It was daylight, the wires were visible, and the plaintiff knew that some of the wires might be dangerous. He unnecessarily stooped under some wires which he thought and knew might be dangerous, without noticing another set of wires lower down which were in plain sight. In consequence of this conduct his hand came in contact with one of the alternating electric light wires at a point where the insulation was worn off and he received his injury. If necessary to the decision, it would certainly deserve consideration whether this conduct does not show an unnecessary exposure to a danger which the plaintiff knew or ought to have known."

The plaintiffs cite Dwyer v. Buffalo General Electric Co., 20 App. Div. 124, 46 N. Y. Supp. 874, and Paine v. Electric Illuminating & P. Co., 64 App. Div. 477, 72 N. Y. Supp. 279. But these are not in point. In the Dwyer Case the bracket touched by the intestate was perfectly harmless, and the injured person had no reason to expect any danger by coming in contact with it. Owing, however, to the escape of the defendant's electricity, it became a deadly instrument. So in the Paine Case, the Western Union Telegraph wire upon which the deceased was working carried a harmless current, and, as it belonged to his employer, he had a right to assume that it would not otherwise be charged; but a deadly current escaped from the defendant's wire into it, thereby causing his death.

The allegations of the complaint will not, in my judgment, support a finding that the plaintiff's intestate was free from negligence. I am therefore of the opinion that the complaint does not state a cause of action against demurrant, and that the demurrer must be sustained, with right to the plaintiffs to plead over upon the usual terms.

Ordered accordingly.