# LYDIA A. MUSOLF v. DULUTH EDISON ELECTRIC COMPANY.[1]

July 9, 1909.

Nos. 16,155—(168).

**Death of Telephone Lineman from Electric Current of Another Company.**

Deceased, an employee of a telephone company, while working on its wires suspended between poles, was killed by electricity communicated through contact of a heavily charged wire of defendant electric company with a wire of which deceased took hold when it was raised to him by another servant. It is *held:*

1. Defendant's negligence was for the jury. The evidence of defective insulation, uninspected for six years, presented a question of fact. Deceased was on the premises of his employer, and was neither a trespasser nor a licensee.

2. Defendant owed him the affirmative duty of exercising commensurate care to protect him from danger due to its wires carrying a dangerous current. Whether the failure of defendant to properly insulate its wire was the proximate cause of the damages was for the jury.

3. Deceased was not as a matter of law guilty of contributory negligence, nor was his death as a matter of law due to negligence of a fellow servant.

4. An instrument whereby plaintiff agreed not to sue the telephone company unless it should be held as a matter of law that plaintiff could not recover damages against the defendant company, and unless the consideration paid should be returned to the telephone company, is construed to be a covenant not to sue, and not a release. Plaintiff was not precluded thereby from enforcing liability against defendant.

5. That instrument did not purport to be, and did not operate as, a partial satisfaction. Defendant was not entitled to deduct its consideration from the amount of the verdict.

6. Alleged trial errors do not justify reversal.

Action in the district court for St. Louis county by the administratrix of the estate of Stanley R. Musolf, deceased, to recover $5,000 for the death of her intestate, while in the employ of the Zenith Telephone Company as a telephone lineman. The negligence alleged is stated in the first paragraph of the opinion. The answer set up a payment of $1,000 by the company insuring the Zenith Telephone

[1]Reported in 122 N. W. 499.

108  M.—24.

Company against accidents to decedent's next of kin in full satisfaction for his death. The case was tried before Ensign, J.; and a jury which returned a verdict in favor of defendant for the sum demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*E. C. Kennedy,* for appellant.
*A. E. McManus,* for respondent.

JAGGARD, J.

This action was brought by plaintiff, as administratrix, respondent herein, of the deceased, to recover from defendant and appellant damages for the death of the said deceased while in the employ of a telephone company on May 22, 1908. The deceased was working at the upper cable, suspended between poles of the telephone company some eight or ten feet above defendant's wires. All wires were many feet above the ground. His helper had pulled a platform up to him in accordance with custom, and then at the request of the deceased took a piece of wire from a coil on the ground, which was coiled up there for that purpose, and by means of a rope drew it up to deceased. The piece of wire sent up was too short for its intended purpose. Deceased asked him to send up another and longer piece. The assistant procured such a piece, coiled it up, tied it to the rope, and was pulling it up to deceased, when the wire became uncoiled. One end of it came in contact with the wires of defendant and appellant, heavily charged with electricity. As it came up to the platform, deceased reached over and, instead of grasping the rope to which the wire was attached, took hold of the wire itself with his left hand. The current was grounded through the deceased, who had put his right hand on some other substance, passed through him, precipitated him to the ground, and caused his death. The negligence with which the defendant was charged was "that the defendant strung and maintained two wires through which was transmitted a heavy electrical current upon poles of the telephone company, and that the wires so strung and maintained by the defendant were negligently and improperly insulated; that the electrical current passing through them was dangerous and fatal to human life, and a menace to the public and any one who

should come in contact with or near the wires." The jury returned a verdict of $5,000. This appeal was taken from the denial of the usual motion in the alternative.

1. The defendant contends that it was not guilty of actionable negligence. The testimony was sufficient to justify the jury in finding that the insulation on defendant's wires was "frayed," "bad," "burned," "ragged strips hanging from it." "There were threads hanging here and there." The wires had been strung six years before the accident, and had not been inspected since that time. It sufficiently appeared that if the wire had been properly insulated the current could not have "leaked" in the manner in which it did, unless there had been "quite a spell" of wet weather. The questions as to immediate climatic conditions and as to improper insulation were fairly of fact for the jury.

Defendant urges, however, that deceased was either a licensee or a trespasser. It insists: "The poles, upon which were strung the wires of the Zenith Telephone Company and the wires of the defendant, Duluth Edison Electric Company, were used and occupied by both companies by a common understanding between them. The electric company had the right to use the poles of the telephone company, and the telephone company had the right to use the poles of the electric company, for stringing and operating their wires for the respective purposes of the different companies." Accordingly, the deceased, while acting within the scope of his employment, was a licensee; but "if he meddled with the wires of the defendant electric company or used them for purposes other than that for which they were intended, then he was a trespasser in his relation to the defendant company, and in either case of licensee or trespasser the same degree of care is not charged upon the defendant company as would be in case of a person upon a public highway, or one who uses electricity furnished by it as a commodity, under the rule announced by this court in Gilbert v. Duluth General Electric Co., 93 Minn. 99," [100 N. W. 653, 106 Am. St. 430.] Plaintiff, on the other hand, contends that deceased was neither a licensee nor a trespasser, but was on the wires stretched between the poles of the telephone company; that is, that he was on the premises of his master. In point of fact the trial court charged, in effect, that

plaintiff at the time of his death was working on the wires of the telephone company, suspended from the poles of the telephone company. No exception was taken to this charge, and no assignment of error is directed to it. It appears from this and, although not so clearly, from other parts of the record, that the ownership of the poles by the employer of the deceased was assumed on trial. It must therefore be so assumed here. It follows that plaintiff was upon his master's premises, and was not a licensee or a trespasser.

Defendant's duty under the circumstances was clear. The use of electricity, a "silent, deadly, and instantaneous force," is governed by the law of negligence, not by the principles of insurance of safety. See New Omaha v. Anderson, 73 Neb. 84, 102 N. W. 89. In this respect it is an exception to the general rule of insurance of safety applied to similarly dangerous instrumentalities. The persons employing so terribly dangerous a force can exonerate themselves, however, only by showing the exercise of greatest diligence. The exercise of commensurate care on the part of defendant company, therefore, required at least that the insulation of the kind used be in good and operative condition. It appears from the testimony that the assistant frequently sent up wires to the cable splicer at different places, including this same place and the same platform and to the deceased himself. It also appears that the wires were frequently sent up, "generally coiled," and, "remaining that way," would safely pass defendant's wires. Our attention has been called to no testimony that this was, however, the invariable custom. Inferentially, they might sometimes have been sent up uncoiled. In wet weather—and it is to be remembered that defendant emphasized the fall of rain about this time—the wet rope attached to a coil would naturally be inclined to transmit the current to one handling the rope as deceased was doing; would, if the coil of wire had come in contact with defendant's wires, if defectively insulated. Under the circumstances it is clear that the defendant owed to the plaintiff the affirmative duty to take care. See, for example, Snyder v. Mutual Tel. Co., 135 Iowa, 215, 112 N. W. 777, 14 L. R. A. (N. S.) 321; Cf. Smith v. Twin City Rapid Transit Co., 102 Minn. 4, 112 N. W. 1001; Pittsburgh Rys. Co. v. Chapman, 145 Fed. 886, 888, 76 C. C. A. 418. The finding of the jury that defendant failed to

exercise due care in insulating its wires and thereby violated its duty to plaintiff must be sustained.

In none of the authorities to which defendant directs our attention was the person injured upon the premises of his master as was this deceased. In Hector v. Boston, 161 Mass. 558, 37 N. E. 773, 25 L. R. A. 554, the lineman was on the roof of a city house. It did not there appear that the defendant had invited or licensed plaintiff to go where he was when he was injured. To Rowe v. Taylorville, 213 Ill. 318, 72 N. E. 711, the same distinction applies. It also there appeared the telephone men knew they could not work when the current was on, knew that the electric company's wires were uninsulated, and without justification relied on the electric company's custom of blowing a whistle before turning the current on. In Mangan v. Hudson River, 50 Misc. 388, 100 N. Y. Supp. 539, also the plaintiff was either a licensee or a trespasser. In Graves v. Washington, 44 Wash. 675, 87 Pac. 956, 11 L. R. A. (N. S.) 452, the plaintiff injured was a part of the general public to whom the company owed no duty to insulate wires. And see New Omaha v. Anderson, 73 Neb. 84, 102 N. W. 89, in which the intestate of the plaintiff died as a result of an electric shock received by him while acting as a fireman at a fire, and Cumberland v. Martin, 116 Ky. 554, 76 S. W. 394, 77 S. W. 718, 63 L. R. A. 469, 105 Am. St. 229, in which deceased took refuge from an electric storm under the porch of a store. He placed his back against an iron grating over a window, and was subsequently killed by lightning which struck one of defendant's telephones near the store and was conducted to the porch by a wire negligently maintained over the metal roof thereof. Bennett v. Railroad Co., 102 U. S. 577, 586, 26 L. Ed. 235 (in which plaintiff fell into a hatch hole in depot floor) ; Fredenburg v. Baer, 89 Minn. 241, 94 N. W. 683 (in which plaintiff, on his way to a closet, fell into an areaway on defendant's premises) ; Schreiner v. Great Northern Ry. Co., 86 Minn. 245, 248, 90 N. W. 400, 58 L. R. A. 75 (which involved a person walking on a railroad track) ; New York v. Speicher, 59 N. J. L. 23, 39 Atl. 661 (in which a lineman in the employ of a city was injured by the giving way of a cross-bar on a telegraph pole designed to carry wires only). It is to be noted, however, that in Mitchell v. Raleigh, 129 N. C. 166, 39

S. E. 801, 55 L. R. A. 398, 85 Am. St. 735, it was held that, a telephone company and a light company jointly occupying the street, such joint occupancy gave enough relationship between the parties, so that a telephone lineman, who was injured because of defective insulation in the light company's wire, had a right of action.

In the case at bar. the deceased was working on his master's premises, in the course of his natural and usual employment, at a place where defendant knew he might naturally be required to go. Defendant had failed to inspect its insulation for six years. The most casual view, according to the testimony favorable to plaintiff, would have shown its imperfect condition. Defendant owed deceased a duty. Its violation of that duty the jury was justified in finding.

. 2. Whether the negligence of defendant was the proximate cause of the injury was fairly a question for the jury. The imperfection of the insulation, in the natural and continual sequence, unbroken by the act of any human wrongdoer, had a natural tendency to produce the harm complained of. Mere mention of the inclination of the current in a wire to escape upon contact with another wire suffices. The lack of insulation in the heavily charged wire was the efficient cause, the one that necessarily set the other causes in operation. See Mitchell v. Raleigh, 129 N. C. 166, 39 S. E. 801, 55 L. R. A. 398, 85 Am. St. 735. It was not incidental. See Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395, and Goodlander Mill Co. v. Standard Oil Co., 63 Fed. 400, 11 C. C. A. 253, 27 L. R. A. 583. There is no analogy between the instant case and Davis v. Port Huron, 126 Mich. 429, 85 N. W. 1125. The plaintiff in that case, engaged in stringing the wire for a call bell, went upon the roof of a building over which a live electric wire was suspended. The roof was wet and slippery. Plaintiff slipped, came in contact with the live wire, and was injured. It was naturally held that he assumed the risk and could not recover.

3. The jury found that the death of the deceased was not caused by his own negligence. No considerations have appeared in the record which would justify us in holding that as a matter of law deceased knew of the defective insulation of the wires. He had the right to rely upon the performance of its duty by defendant. He was not bound to anticipate defendant's negligence. See Mitchell v.

Raleigh, 129 N. C. 166, 39 S. E. 801, 55 L. R. A. 398, 85 Am. St. 735. Nor does the record show as a matter of law that plaintiff's death was due to the negligence of the fellow servant, inasmuch as that negligence does not conclusively appear.

4. Defendant further contends that an instrument executed by plaintiff and the telephone company operated as a discharge of defendant's liability.

The English authorities are clear that, if there be a satisfaction and an extinguishment of a cause of action ex contractu or ex delicto by an absolute or unconditional release executed to one of a number of persons jointly liable, the cause of action is released as to all; however, where it is agreed that one of the parties is not to be sued, the instrument is not a release. Such words are quite as applicable to a covenant not to sue as to a release. See Bateson v. Gosling, L. R. 7 C. P. 9, per Willes, J., at page 14, and per Keating and Brett, JJ., at page 16. The question is one of intention. If the instrument is to operate as a release, the right against a party jointly liable cannot be reserved. Price v. Barker, 4 El. & Bl. 760, 777, per Coleridge, J. These two cases involved actions ex contractu. The test they announced for determining the difference between a covenant not to sue and a release was approved and applied in an action ex delicto in Duck v. Mayeu [1892] 2 Q. B. 511.

The American authorities, defendant frankly admits, have recognized the substance of the rule. In one of the later cases, Chicago v. Averill, 224 Ill. 516, 522, 79 N. E. 654, 656, Wilkins, J., says: "The legal effect of a covenant not to sue is not the same as that of a release. A covenant not to sue a sole tort feasor is considered in law a discharge and a bar to an action against him, but the rule is otherwise where there are two or more tort feasors and the covenant is with one of them not to sue him. In such case the covenant does not operate as a release of either the covenantee or the other tort feasor, but the former must resort to his suit for breach of the covenant and the latter cannot invoke the covenant as a bar to an action against him."

The principal controversy here concerns, not the rule itself, but the means by which a covenant not to sue is to be distinguished from a release. The reservation of the right to sue other joint tort feasors

is obviously necessary to a covenant not to sue. Snyder v. Mutual Tel. Co., 135 Iowa, 215, 112 N. W. 776, 14 L. R. A. (N. S.) 321.

The inclination of the American cases is to lay less stress than the English decisions upon the new agreement not to sue and to hold that it is neither an exclusive nor a conclusive test. Many instruments concerning such a reservation have been held to be releases. There is not, however, the inconsistency between the authorities on the point which is sometimes attributed to them. Undoubtedly, general statements have tended to create doubt and confusion; but when they are limited to the particular instrument in issue most apparent discrepancies disappear. It is entirely consistent with giving effect to the reservation of a right to sue other joint tort feasors to hold that a clause in an agreement that other persons jointly liable shall not be discharged by the agreement not to sue a particular joint tort feasor does not prevent the instrument, construed as a whole, from being a release. If a given instrument, so construed, is in law a release, it is not material that the parties agreed that it shall not be a release. The repugnant clause is void, just as in the case of an agreement which really creates a partnership a clause that the parties shall not be partners is ineffectual. The law construes such instruments, determines their effect, and enforces the sequences which follow from the real intent.

Thus in McBride v. Scott, 132 Mich. 176, 93 N. W. 243, 61 L. R. A. 445, 102 Am. St. 416, 1 Am. & Eng. An. Cas. 61, and note, the injured person released one joint tort feasor and distinctly and expressly reserved all rights and claims against each and all other wrongdoers for any and all sums in addition to the sum paid by the person released by way of reduction pro tanto of damages for which the suit had in fact been brought. This was with obvious propriety held to be a release. And see Abb v. Northern Pacific, 28 Wash. 428, 68 Pac. 954, 58 L. R. A. 293, 92 Am. St. 864; Ducey v. Patterson, 37 Colo. 216, 86 Pac. 109, 9 L. R. A. (N. S.) 1066, 119 Am. St. 284, 11 Am. & Eng. An. Cas. 393.

It is not, however, necessary here to consider nor to determine the exact test by which a release is to be distinguished from a covenant not to sue. It is well settled that the distinction exists; that the intention of the parties controls; that if they have in fact, by use of

consistent terms, expressed an intention not to bring an action against one of a larger number of joint tort feasors and not to discharge the others, the law will give effect to their agreement; and that despite the execution of the agreement recovery may be had against the tort feasors not parties to the instrument. As Brown, P., said in Bloss v. Plymale, 3 W. Va. 393, 407, 100 Am. Dec. 752, 756: "A contract or agreement not unlawful in itself and plain and express in its terms, shall not be construed, nor made to defeat the object and intention of the parties, and much less to work a result they sought to avoid."

In the case at bar the writing, after reciting the facts from which the injury arose and the payment of a consideration of $1,000, set forth that plaintiff covenanted with the telephone company that she would never prosecute any action against the telephone company for damages arising from the death of deceased, that the payment of the consideration should in no wise debar or affect any action against other persons or corporations arising out of the death, and that the consideration was paid solely for said covenant not to sue the telephone company for such damages. It also contained a clause to the effect that in case, in an action against the present defendant, the courts should hold that no cause of action existed against such defendant for such damages, the plaintiff might remit the said $1,000 to the telephone company, and thereafter commence an action against the telephone company at any time within the statute of limitations. The clearly expressed intent was to create, not a release, but a covenant not to sue. The instrument contained no inconsistencies in language. It was not absolute, but conditional, in its terms. It did not purport to be a satisfaction of the telephone company's liability. It did not finally extinguish the right to sue against any of the tort feasors. To hold that it operated as a satisfaction of the cause of action arising from the negligence which it recited as the cause of death of deceased would be a gross perversion of its terms and a misapplication of the principles we have just considered.

5. It is further argued that the amount paid by the telephone company should be deducted from the award of the jury. Defendant urges: "If the plaintiff, in an action brought under [section 4503, R. L. 1905, giving a right of action for death by wrongful act],

could receive from different ones an amount of money under agreements not to sue, then in many instances there would be in effect a recovery for much more than the limitations placed upon it by the legislature." In McBride v. Scott, 132 Mich. 176, 93 N. W. 243, 61 L. R. A. 445, 102 Am. St. 416, it was said that, if any other were the rule, the plaintiff in many instances would operate upon the fears of defendants and get from each full damages for the trespass committed. While this argument from inconvenience is in a measure cogent, it does not justify defendant's conclusion in this case.   Competent parties are fully protected in their freedom to make lawful contracts. Agreements to avoid litigation are lawful contracts.   Negotiations leading to them are protected.   They are both encouraged and enforced.   When competent parties have written out the terms upon which they have agreed, the contract must be reasonably construed, so as to carry out their intentions.   In the particularly well-considered case of Bloss v. Plymale, 3 W. Va. 393, 100 Am. Dec. 752, 754, Brown, P., said:

"No release is allowed by implication; it must be the immediate result of the terms of the instrument, which contains the stipulation, hence it is that a covenant not to sue one joint debtor or trespasser, though it operates between the immediate parties, does not extend to the others."   Such a covenant is an agreement for the benefit of the parties named, and for them only.   Other joint tort feasors, not parties thereto, are entitled to no contract benefit thereunder.   In a multitude of cases, this general rule as to covenant not to sue has been applied, and full recovery had against other persons jointly liable.   There can, of course, be but one satisfaction of a cause of action.   An unqualified release imports full satisfaction.   Therefore it avails to bar subsequent recovery of damages for a cause of action which has been discharged; that is, the release of one is the release of all.   A release which is expressly in part satisfaction only, by parity of reasoning, has been held to reduce the amount subsequently recoverable.   Defendant refers us to authorities which have so held.   Thus in Ellis v. Esson, 50 Wis. 138, 6 N. W. 518, 36 Am. 830, an action for trespass to realty, to which defendant especially refers us, the court held: "In the absence of any technical release or discharge, under seal, of one joint trespasser, the receipt of money

from one, with an agreement not to prosecute him, discharges the others only where such money is received as an accord and satisfaction for the whole injury; where it is received only as part satisfaction, it discharges the others only pro tanto."

As to the absence of merit in the reservation appearing in that case, see McBride v. Scott, 132 Mich. 176, 182, 93 N. W. 243, 61 L. R. A. 445, 102 Am. St. 416. Other cases involving the same principle will be found analyzed in a note to Abb v. Northern Pacific, 28 Wash. 428, 68 Pac. 954, 58 L. R. A. 293–301, "(b)—Partial Satisfaction." Cf. Brennan v. Electrical Co., 120 Ill. App. 461, 478.

In the case at bar the statute limited the amount of recovery to $5,000. The agreement, as has been pointed out, was not a release at all, but an optional covenant not to sue. The agreement was not in the nature of a receipt, of an accord and satisfaction, or of a settlement of a claim, in whole or in part. It excluded the idea of satisfaction, either partial or entire. It was expressly conditional. In a named contingency plaintiff was entitled to return the consideration paid and to sue the telephone company. In this view it is unnecessary to consider the further questions whether the telephone company and the telegraph company, in view of the absence of any concert of action, were joint tort feasors in the technical sense (compare Chapman v. Pittsburg Rys. Co. [C. C.] 140 Fed. 784, affirmed Pittsburgh Rys. Co. v. Chapman, 145 Fed. 886, 76 C. C. A. 418, and Thomas v. Central, 194 Pa. St. 511, 514, 45 Atl. 344, with Hartigan v. Dickson, 81 Minn. 284, 83 N. W. 1091), and whether the telephone company was or was not, in fact or in law, liable at all (see Snyder v. Mutual Tel. Co., 135 Iowa, 215, 112 N. W. 776, 14 L. R. A. [N. S.] 321; Pickwick v. McCauliff, 193 Mass. 70, 78 N. E. 730, 8 Am. & Eng. An. Cas. 1041; Robinson v. St. Johnsbury, 80 Vt. 129, 66 Atl. 814, 12 Am. & Eng. An. Cas. 1060, 1065).

A number of alleged trial errors have been assigned. Most of the objections to rulings on evidence were addressed to exclusion by the trial court of testimony as to the experience of the deceased. In part, at least, the objections were withdrawn. In part they were addressed to conclusions purely and were properly excluded. The testimony fully showed the facts from which the inference of the ex-

perience of deceased necessarily flowed. Objections as to testimony concerning the conditions of the insulation on defendant's wires the morning after the accident were properly overruled. Snyder v. Mutual Tel. Co. 135 Iowa, 215, 112 N. W. 776, 14 L. R. A. (N. S.) 321, 326. The charge of the court as a whole laid down familiar and correct principles. Its charge that the testimony of the experts was not binding on the jury was correct, within Moratzky v. Wirth, 74 Minn. 146, 76 N. W. 1032. The other assignments of error, we find, do not justify either special mention or reversal.

Affirmed.