## KARN v. ANDRESEN et al.

District Court, D. Minnesota, Sixth Division.
May 26, 1931.

Daly & Barnard, of Renville, Minn., for plaintiff.

Hall & Catlin, of Marshall, Minn., for defendants.

SANBORN, District Judge.

The facts, so far as material, are as follows:

The Citizens' National Bank of Ortonville, a national bank doing business at Ortonville, Minn., prior to December 23, 1926, was on that day closed and taken over by the Comptroller of the Currency. Mr. Ryder was its first receiver, and in April, 1929, was succeeded by Carl M. Andresen.

B. R. Karn, the plaintiff, was at all times. which are here material, a practicing physician of Ortonville, a stockholder of the bank, arid from 1920 to the date of its closing a director. Mr. Ryder, during the time he was receiver, claimed that the directors of the bank were indebted to it for losses due to their negligence and mismanagement. Mr. Andresen also made that claim after he took over the management of the trust estate. In May, 1929, Mr. Andresen discussed the question of the plaintiff's liability as a director with the plaintiff. At that time the plaintiff had claims against the trust estate aggregating more than $5,000, for which certificates had been issued by the receiver. Dr. Karn offered to release his claims against the bank in full settlement of any liability on his part as a former director of the bank. He was advised that the proposed settlement must be authorized by the Comptroller and approved by the court in order to be effective. Mr. Andresen first advised the Comptroller, in his letter of May 20, 1929, that the amount of the claims against the estate to be released by the plaintiff was $6,352.93. The receiver was authorized by the Comptroller to settle with Dr. Karn on that basis. Thereafter, in his letter of September 12, 1929, the receiver advised the Comptroller that the offer of settlement made by the plaintiff was the assignment of certificates aggregating $5,-560.22, and he requested authority to complete the settlement on that basis. The Comptroller in a letter dated December 19, 1929, authorized such a settlement and directed the receiver, in consideration of the assignment of the plaintiff's claims against the bank, to enter into a covenant not to sue him. Thereafter the receiver procured from the state district court its approval of the proposed settlement, and tendered to the plaintiff · a certified copy of the order of court and the covenant not to sue. The plaintiff directed that these papers be submitted to Mr. F. L. Cliff, his attorney. Mr. Cliff refused his approval.

On December 24, 1929, the receiver wrote to the Comptroller in part as follows:

"Under date of September 19th, 1929 we were authorized to accept from former director, B. R. Karn his offer of settlement on director's liability, being the assignment to this trust of his interest in receiver's certificates originally reported to your office in the amount of $6,352.93, but later reduced to $5,560.22 as explained in our letter of September 12th. On the strength of Mr. Karn's offer together with proper authority from your office, we petitioned the Court for an order authorizing us to complete settlement on this basis. A copy of the Petition, Certified Copy of Court Order, and a Covenant not to sue agreement was forwarded your office in our letter of Oct. 3rd.

"In completing this settlement objections were raised by Atty. F. L. Cliff, who is the father in law of Mr. Karn, as to the Covenant not to sue agreement. The form used was identical with that used in the settlement with the directors at the Beardsley trust which was approved by your office. Further objections were raised that this director did not want to go on record in the District Court as being liable, or admitting liability, as to the failure of this bank.

"As a result Atty. Cliff has advised Mr. Karn to withdraw his offer of settlement, which the latter has now done. The papers as forwarded you in our letter of October 3rd are therefore null and void as far as this settlement is concerned. Suit will have to be instituted against this director, as well as the other former directors of this bank, to determine the liability."

On December 30, 1929, the Comptroller wrote the receiver as follows:

"Receipt is acknowledged of your letter of December 24th advising that Mr. B. R. Karn, a former director of your bank, has withdrawn his offer to surrender his Receiver's Certificates totalling $5,560.22 in consideration of your executing a covenant not to sue him on a statutory and common law directors' liability. This compromise had been approved by this office and by an order of the District Court, 16th Judicial District of Minnesota. Mr. Karn raised certain objections to the form of the covenant

not to sue and his attorney advised him to withdraw his offer of settlement. You state that it will now be necessary to file suit against Mr. Karn and the other directors, and your general attorney, Mr. Chrisman, because of his friendship for the Karn family, has requested the designation of a special attorney to handle this suit. You request instructions as to the course to be pursued.

"It is our view that the rights of the parties to this compromise were concluded when the Court ordered you to execute the covenant not to sue. Thereafter, Mr. Karn was powerless to withdraw his offer. Accordingly, you will advise Mr. Karn that you are willing to execute the covenant not to sue as directed by the Court and you will also advise him that your trust claims ownership of all dividends that may be declared on the Receiver's Certificates totalling $5,-560.22, title to which passed to you as Receiver, when the Court's order approving the compromise was signed. You will decline to recognize an assignment of any of these certificates that was not actually executed and recognized as an assignment by you prior to the date of the Court's order and demand that Mr. Karn return the same to you for cancellation. On this theory, you will vigorously defend in the United States District Court any action that may be filed to test your trust's ownership of the funds represented by these Receiver's Certificates. As your attorney knows, such an action is cognizable in the United States District Court as a suit to wind up the affairs of a national bank, independent of the amount involved. See Studebaker Corporation of America v. First National Bank of Florence, 10 F.(2d) 590.

"If this view will eliminate Mr. Karn from any suit that is to be filed against the former directors of your bank, we assume that Mr. Chrisman will now be able to go forward with the preparation of the action contemplated against the other directors."

The defendant receiver has at all times since the approval by the court of the settlement been ready, able, and willing to execute the covenant not to sue. In a suit commenced against the former directors of this bank, the plaintiff was not made a defendant.

It is the contention of the plaintiff that no settlement was actually agreed upon or executed. It is the contention of the defendant receiver that an agreement as to the settlement of the plaintiff's liability as a director was made and completed.

The covenant not to sue was not actually executed by the parties, nor were the receiver's certificates actually assigned in writing by the plaintiff. I find, however, from the evidence, that the offer made by the plaintiff to the receiver, in settlement of all claims made against him by the receiver growing out of his acts as a director of the bank, was accepted by the receiver, approved by the Comptroller of the Currency, approved by the state district court, and Dr. Karn notified of its acceptance, prior to any attempt on his part to withdraw the offer, and that all that remained to be done were the formal and ministerial acts of signing the covenant not to sue and transferring the receiver's certificates. These acts would only be evidence of the agreement, and not the agreement itself.

Had Dr. Karn withdrawn his offer at any time prior to its approval by the court, the situation would have been different. It is true that he testifies to a different state of facts than the receiver and his witnesses. The inference to be drawn from the plaintiff's testimony is that he asked the receiver to find out from the Comptroller what settlement would be approved, and that the receiver, instead of doing that, reported to the Comptroller that he had actually received an offer from the plaintiff, and thereupon proceeded to procure its approval by the Comptroller and by the court, before the plaintiff was advised as to what was being done. It is, of course, possible that this was the situation, but there are two reasons why it is extremely improbable. The first is that the receiver had no adequate reason and no apparent motive for misrepresenting the facts to his superior officer, the Comptroller. The second is that the letter written by the receiver on December 24, 1929, indicates that he supposed that the plaintiff could withdraw his offer even after it had been approved by the Comptroller and the court. To charge the receiver with attempting to fabricate a settlement which, in his opinion, would become null and void, even though approved by the Comptroller and the court, in case the papers were not approved by the plaintiff's attorney, is not in accordance with reason.

The only real question in this case is whether the minds of the parties actually met upon the settlement. If the plaintiff was bargaining for a release not only of his own liability, but of that of his codirectors as well, there was no agreement. If he was bargaining for his own release, there was

an agreement. A release of a joint tort-feasor is a very different thing than a covenant not to sue, which reserves the right to proceed against other joint tort-feasors. Davis v. Moses, 172 Minn. 171, 215 N. W. 225; Musolf v. Duluth Edison Electric Co., 108 Minn. 369, 122 N. W. 499, 24 L. R. A. (N. S.) 451 and note. So far as I am aware, the only way that one joint tort-feasor can be released without releasing the others is by the method proposed. The evidence does not warrant a finding that the plaintiff was interested in anything except the release of his own several liability. He was bargaining for that. His offer was accepted. After having secured the approval of the settlement and having delivered the covenant, at the plaintiff's request, to his counsel, it is scarcely conceivable that the receiver could have successfully maintained a suit against the plaintiff on his liability as a director. If the receiver could not have maintained a suit against the plaintiff, the plaintiff could not have successfully sued the receiver upon the plaintiff's claim against the bank. There is nothing to indicate that the plaintiff was bargaining for any particular form of release or that he made a condition of his offer that the written evidence of the agreement should be such as would be approved by his counsel.

Finding the facts and the law to be as hereinbefore stated, I reach the conclusion that the defendants are entitled to a decree dismissing the complaint of the plaintiff, and for costs.