**KARN v. ANDRESEN et al.**

No. 9369.

Circuit Court of Appeals, Eighth Circuit.
June 28, 1932.

E. V. Cliff, of Ortonville, Minn. (F. L. Cliff, of Ortonville, Minn., and Daly & Barnard, of Renville, Minn., on the brief), for appellant.

James H. Hall, of Marshall, Minn. (Hall & Catlin, of Marshall, Minn., on the brief), for appellees.

Before STONE and KENYON, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

The Citizens' National Bank of Ortonville, Minn., having become insolvent, was taken over by the Comptroller of the Currency December 23, 1926, and one William Ryder was appointed receiver. Ryder served as receiver until April 1, 1929, when he was succeeded by Carl M. Andresen. Andresen, as receiver, and the bank are the appellees. The appellant, a stockholder and director of the bank, had certain claims against the bank, which had been allowed and on which dividends had been declared. These dividends had been retained by the receiver. It was contended by the receiver that the appellant had entered into an agreement of settlement with the receiver by the terms of which he surrendered his claims in consideration of a covenant not to sue him on his liability as a director. It had been asserted by the receiver that the directors, including the appellant, by negligence in the discharge of their official duties, had caused the bank a loss in the amount of $123,691.55 and that they were jointly and severally liable therefor. Appellant brought the present action to enforce his claims in so far as dividends had been declared and to require the receiver to pay him such further dividends as might be declared. The defense was the alleged settlement. The trial court found for the appellees, decreed they were the lawful owners of dividends declared and to be declared on appellant's claims, and dismissed appellant's bill.

While there are several assignments and specifications of error, all of which have been considered, this appeal really presents a single question and that a question of fact. Undoubtedly there were negotiations between the parties looking to the settlement of their conflicting claims. Following these negotiations a covenant not to sue appellant, which had been approved by the Comptroller of the Currency and a state district court, was delivered to the appellant. Conceding there were negotiations between the parties looking to the settlement of their claims, the appellant contends that his offer was the surrender of his claims in consideration of a release of all liability growing out of his connection with the bank as a director, that that offer never was accepted, that the tendering to him of a covenant not to sue was not an acceptance, since the effect of that was only to release him from liability to the bank and to the receiver and not from liability to other directors should they be sued by the receiver, recovery had from them, and contribution from appellant sought by them. Appellees contend that the appellant offered to surrender his claims against the bank for the release of the bank's and receiver's claims against him and that that offer was accepted and fully met when a covenant not to sue was tendered to him.

In resolving this issue of fact in favor of appellees, the trial court said:

"I find * * * from the evidence that the offer made by the plaintiff (appellant) to the receiver in settlement of all claims made against him by the receiver, growing out of his acts as a director of the bank, was accepted by the receiver, approved by the Comptroller of the Currency, approved by the state district court and Dr. Karn (appellant) notified of its acceptance, * * * and that all that remained to be done were the formal and ministerial acts of signing the covenant not to sue and transferring the receiver's certificates. These documents would only be evidence of the agreement, and not the agreement itself.

"The only real question in this case is whether the minds of the parties actually met upon the settlement. If the plaintiff was bargaining for a release not only of his own liability, but of that of his co-directors as well, there was no agreement. If he was bargaining for his own release, there is an agreement. A release of a joint tortfeasor is a very different thing than a covenant not to sue, which reserves the right to proceed against other joint tortfeasors. Davis v. Moses, 172 Minn. 171, 215 N. W. 225; Musolf v. Duluth Edison Electric Co., 108 Minn. 369, 122 N. W. 499, 24 L. R. A. (N. S.) 451 and note. So far as I am aware, the only way that one joint tortfeasor can be released without releasing the others is by the method

proposed. The evidence does not warrant a finding that the plaintiff was interested in anything except the release of his own several liability. He was bargaining for that. His offer was accepted. After having secured the approval of the settlement and having delivered the covenant, at the plaintiff's request, to his counsel, it is scarcely conceivable that the receiver could have successfully maintained a suit against the plaintiff on his liability as a director. If the receiver could not have maintained a suit against the plaintiff, the plaintiff could not have successfully sued the receiver upon the plaintiff's claim against the bank. There is nothing to indicate that the plaintiff was bargaining for any particular form of release or that he made a condition of his offer that the written evidence of the agreement should be such as would be approved by his counsel."

It is well settled that findings of fact made by the trial court in an equity case are presumptively correct. United Shoe Machinery Corp. et al. v. United States et al., 258 U. S. 451, 455, 42 S. Ct. 363, 66 L. Ed. 708. They are entitled to great respect. United States v. Detroit Timber & Lumber Company, 200 U. S. 321, 329, 26 S. Ct. 282, 50 L. Ed. 499. Unless clearly they are erroneous they should be sustained. As was said by this court in Coats et al. v. Barton et al. (C. C. A.) 25 F.(2d) 813, 815, concerning findings of fact made in an equity case by the trial judge: "He heard the testimony and received all the evidence * * *, he enjoyed a far better opportunity than we can have to judge of the reliability of the witnesses and the truth of their statements, and it is an established rule of equity practice that, where in a suit in equity the chancellor, * * * has considered conflicting evidence and made his findings and decree thereon, the presumption is that they are correct, and, unless the appellants make it clearly appear that an obvious error of law has intervened, or a serious mistake of fact has been made in the consideration and decision of the issues in the case, that adjudication will not be disturbed."

See, also, Tilghman v. Proctor, 125 U. S. 136, 149, 8 S. Ct. 894, 31 L. Ed. 664; Kennedy et al. v. City of White Bear Lake (8 C. C. A.) 39 F.(2d) 608, 610; Treat v. Rogers (8 C. C. A.) 35 F.(2d) 77, 78; Quinn v. Union National Bank (8 C. C. A.) 32 F.(2d) 762, 763; Lacy v. McCafferty (8 C. C. A.) 215 F. 352, 353; Blank v. Aronson (8 C. C. A.) 187 F. 241, 244; Hussey v. Richardson-Roberts Dry Goods Company (8 C. C. A.) 148 F. 598, 602; Thallmann et al. v. Thomas (8 C. C. A.) 111 F. 277, 283.

While the testimony in this case was conflicting, there was positive testimony supporting the trial court's finding. Particularly in point was the testimony of Andresen, the receiver. That testimony was to the effect that Karn, the appellant, in the course of negotiations with the receiver and his attorney, said: "That the best thing to do was to make his offer and get through with it. He said that he would assign these certificates to the receiver that we held. * * * That he had lost so much money in the bank, that in turning over these certificates and dividends he was doing all that he possibly could do. He said that he would assign the receiver's certificates and dividend checks in settlement and compromise of his liability as a director."

Followed this question and answer: "Q. Was anything said at any of these conversations about releasing Dr. Karn from liability? A. Upon a settlement, yes. Mr. Chrisman told him in the bank that he would get a covenant not to sue."

Andresen further testified that appellant Karn was advised that it would be necessary to submit his offer to the Comptroller of the Currency and thereafter to obtain an order of the state district court approving acceptance of that offer.

The appellant himself testified that in the course of the negotiations he understood he was to get a covenant not to sue in consideration of the surrender of his certificates. Exactly his testimony was: "Q. And you knew that the comptroller was willing to accept the certificates and give you a covenant not to sue, you understood that? A. Later in the negotiations, yes."

Here then was testimony from which the trial court was warranted in finding that the appellant had offered to surrender his claims against the bank in consideration of receiving from the bank a release of his liability as a director to the bank and that he was advised that the character of release he would receive was a covenant not to sue and further advised that his offer must be accepted by the Comptroller and an order authorizing its acceptance made by the state district court.

The trial court who saw the witnesses and heard their testimony believed that the foregoing best portrayed what actually took place. From a consideration of the whole record we are constrained to the same view. Appellant's offer was a surrender of his

claims for a release of his liability *to the bank,* or, to use appellant's own language as a witness, for a "clean slate *with the bank.*" That offer was accepted. All the testimony convinces us that appellant had no thought when his offer was made of obtaining a release for all of the directors and no contemplation of possible suits against himself for contribution by his associates on the board of directors. He was threatened with a suit against himself for a total amount of $123,691.55. To avoid that suit and its possible consequences he was willing and offered to surrender his own claims, which amounted to only $5,560.22. It is much more reasonable to believe he was willing and offered to surrender claims in an amount relatively small to escape a threatened suit against himself for a very large amount than that he made an offer which he would have known the receiver could not consider nor accept, namely, the surrender of his claims for an absolute release as against all the directors of a liability totaling more than twenty times the claims surrendered.

The judgment of the District Court should be, and is, affirmed.