## BYNUM v. CITY OF MONROE.

### No. 5289.

Court of Appeal of Louisiana. Second Circuit.

Dec. 11, 1936.

Ben C. Dawkins, Jr., of Shreveport, for appellant.

Hudson, Potts, Bernstein & Snelling, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff brings suit against the City of Monroe to recover damages for permanent injury and disability alleged to have been caused from high voltage of electricity entering her body as she pressed one of the standard signal buttons on defendant's trolley car in which she was riding as a paid passenger. She charges that the accident was due to defects in the electrical wiring of said button, of which she was unaware; and that said defective wiring resulted in producing a short circuit, which would expose any one to shock who attempted to use the button. She further charges that the city failed in its duty to the public, and particularly to passengers on the said trolley car, by not maintaining all of its parts and equipment in a safe condition by regular, adequate inspections; and, inferentially, avers that had such inspections been timely and efficiently made, the defective wiring would have been discovered and the accident would not have happened.

Defendant denies all of the essential allegations of the petition relative to the electric shock to plaintiff and resulting injuries, and avers that plaintiff did complain of being shocked while riding as a paid passenger on one of its cars on the morning of July 9, 1933, but avers that there was no defect in the bell button, or in any other appliance or appurtenance of the car; that its motorman then and there tested the button and received no shock therefrom; that the car was immediately taken out of service and run to its mechanical repair barn, where it was examined thoroughly by a competent and skilled electrician, who found no defects

in its mechanical structure or electric wiring, and it was then put back into service. It is affirmatively pleaded that through a system of transformers the voltage reaching the buttons on the car in question is so materially reduced that it is insufficient to cause any hurtful shock to a person. It avers the performance on its part of each and every legal duty resting upon it in the maintenance and operation of its cars, including regular and adequate inspections thereof.

The demands of plaintiff were rejected at her cost, and she has appealed.

We are convinced from the testimony that plaintiff received a shock of some degree when she pressed the electric button. She was requested to do so by an acquaintance who desired to leave the car. It had not reached plaintiff's destination. She was occupying the end of the seat nearer the bell and pushed it with the index finger of her left hand, and instantly screamed out that she was shocked, or words to that effect. This exclamation attracted the attention of other passengers and the situation was called to the motorman's attention. He stopped the car and, with the assistance of a negro man passenger, carried plaintiff to the residence of Dr. George M. Snelling hard by. She was able to walk, but apparently needed assistance. She was in full possession of her mental faculties, although she alleges and testifies she was unconscious. Dr. Snelling found no objective symptoms of injury, but administered sedatives simply because of her avowed subjective symptoms. Within half an hour she was sent to her home in a taxicab. The doctor visited her professionally three times during the first week thereafter. He was of the opinion that she was shocked, but found her condition not serious.

The motorman, while in Dr. Snelling's residence, phoned for another car to replace the one he was operating. It soon arrived and took over the passengers. As he left the car with plaintiff, he instructed all passengers to remain still and not touch any of the buttons. On his return,—a lapse of not more than 15 minutes—he says he pushed all the buttons, without receiving any shock. The car was promptly run to defendant's maintenance barn and there closely checked and inspected and its wiring tested with approved instruments by its regular electrician. All buttons were pushed while the current was on. Nothing whatever was found wrong with its wiring or other mechanism. It was returned to service without repairs of any kind.

It is shown that a trolley car, such as we are discussing, is propelled by 600 volts of electricity, and that after passing through a register and two fuses, a current of approximately 100 volts is conducted to the bell which rings when the button is pushed, and that such voltage is insufficient to cause serious injury to an adult. It is shown by undisputed testimony that a current of 105 volts will burn out such a bell. In view of this testimony, it seems clear that the shock to plaintiff at best was caused by a voltage less than 105; and such a current, as a rule at least, is inadequate to produce serious injury to an adult. However, we prefer not to rest a decision upon this question of fact, but shall discuss and pass upon the issue of negligence raised in the case and the legal principles applicable thereto. In brief plaintiff's counsel assert that her case rests entirely upon the doctrine of res ipsa loquitur, and cite Johnson v. City of Monroe (La.App.) 164 So. 456, 459, wherein the well-established doctrine that, " 'The burden of proof is on the carrier to prove the absence of negligence, and not on the passenger to prove negligence, where it is shown that a contract of carriage has not been fulfilled.' Haynes v. L. R. & N. Co., 140 La. 1019, 74 So. 538, 540; Cusimano v. N. O. Pub. Service, 12 La. App. 586, 122 So. 903 [See Id., 170 La. 95, 127 So. 376]" was reaffirmed and applied. Recent jurisprudence dealing with this doctrine is discussed and clarified in Cusimano v. New Orleans Public Service, 170 La. 95, 127 So. 376, wherein it was held that while the carrier has the burden of showing that it was free from any negligence which might have caused injury to a passenger, it is not required to show how and why the passenger was injured in order to bar recovery.

Arguendo, conceding that plaintiff sustained some injury from an electric shock while a passenger on defendant's car, we are confronted with the question whether defendant has relieved itself from responsibility by adducing proof of sufficient probative weight to overcome the prima facie case made out by plaintiff. It is shown that its rules require each car must be inspected and checked at

the close of the day's run. It is not definitely shown that the car in question was so inspected and checked before going into service the day of the accident, but it is shown that immediately after the car was returned to the barn, and within an hour or so after the accident, it was tested and inspected closely by approved means and methods and found to be in perfect order. Tests of the buttons at the site of the accident produced no results such as plaintiff experienced. It is reasonable to assume that it left the barn that morning in good mechanical condition.

Electricity is a subtle agency and ofttimes freakish in the accomplishment of direful results. "Its true nature is not understood. But it is recognized as an invisible force with highly dangerous characteristics." 20 Corpus Juris, 305. It is because of its subtleness and dangerous characteristics that the law requires of those supplying it to the public or using it in such way that the public may be injured therefrom, the highest possible degree of care and caution to the end that injury to persons and property may be reduced to a minimum, if not made entirely impossible. However, the law does not exact or require the performance of things deemed impossible within the realm of human experience. Cases may arise, and do arise, wherein injury is suffered by an innocent person, and yet there lies no action in damages for such injury. Anent the principle here discussed, 9 Ruling Case Law, p. 1221, has the following to say:

"While the general rule as to the burden of proving negligence applies, as already stated, to actions against electric companies for personal injuries, yet such actions also frequently afford an opportunity for the application of the well established doctrine that where the thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of events would not happen if he had used proper care, it affords reasonable evidence, in the absence of a satisfactory explanation, that the accident arose from a want of care. The mere introduction of the facts surrounding an injury from electricity, showing that such injury resulted from contact with live electric wires or other appliances when out of proper condition or out of their natural place, may suffice, under this doctrine of res ipsa loquitur, to raise a prima facie presumption that the electrical company having such appliances in charge has been negligent in the performance of its duty, and to place upon the company the burden of overthrowing such presumption. * * *

"The defendant company may rebut the plaintiff's prima facie case thus made in any way showing the absence of negligence on its part. Thus it may show that there was no defect in its appliances, or, if that cannot be done, that the defect was caused by circumstances over which it had no control, or that such defect existed for so short a time that the defendant could not be reasonably expected to have been informed of it, and thereby have an opportunity to mend it."

The rule here discussed has all the earmarks of being a just one, and we think applicable to the instant case.

20 Corpus Juris, 359, § 45, touching the nature and adequacy of inspections, has this to say:

"Diligence must be exercised to discover any breaks or defects in the wires. The company must make reasonable and proper inspection of its appliances, or, as asserted by some authorities, must exercise the highest degree of care in such inspection. *This duty does not contemplate such inspection as would absolutely forestall injuries. The exercise of due care requires such reasonable and thorough inspection as will preserve insulation from impairment or detect defects when occurring.* The reasonableness of the inspection *depends not only on the condition of the line, but also on the nature of the danger to be feared.* * * *

"The liability of an electric company for injuries turns upon whether the company knew of the defect causing the injury or by the exercise of reasonable diligence should have known it."

That is in line with our own views of defendant's duty.

We think defendant has successfully met and overcome the prima facie case made out against it. It is not an insurer of the safety of those who ride its cars. It is not required, as a matter of duty, to daily dismantle parts of these cars to determine the condition of the wiring therein. To so require would be imposing a burden upon it of an unreasonable character, handicap it in the per-

formance of its duties to the public, without accomplishing, perhaps, the results such a rule would be designed to attain.

For the reasons herein assigned, the judgment appealed from is affirmed, with costs.