MOISE, Justice.
 

 The town of Lake Providence is appealing in these three consolidated cases from judgments for damages against it totaling $40,662.00, with legal interest from December 11, 1945. The basis of the actions is one sounding in tort against the Town for the negligent operation of its electric light and power plant, the proximate cause of the loss of plaintiffs’ properties by fire.
 

 The plaintiffs, in three separate suits, alleged specific acts of negligence of the Town of Lake Providence in the construction, maintenance and operation of its transmission lines, and have filed a plea of res ipsa loquitur.
 

 The defendant filed a blanket exception ■ of no right or cause of action, without specifying the basis of its contention. It also filed a plea attempting to attack the validity of Section 13 of Act 136 of 1898, as amended, contending generally that the same was unconstitutional but without specifying any article or section of the Constitution allegedly offended by the Act. Later, defendant filed a plea attacking the constitutionality of Act 129 of 1942. The exceptions and pleas were argued and submitted, after which they were overruled by the district judge.
 

 On the trial on the merits, the cases having been consolidated, 209 La. 898, 25 So.2d 735, judgments were rendered in each instance holding the statutes in question to be constitutional and awarding judgments in favor of each of the plaintiffs as prayed for, and against the Town of Lake Providence, with legal interest from December 11, 1945. Suspensive and devolutive appeals, without bond, were perfected by defendant. Plaintiffs have answered these appeals asking that interest be allowed from date of judicial demand.
 

 The record discloses that the governing authority of the Town of Lake Providence authorized the construction and did construct electric light and power lines within the town itself and to also serve residents of the Parish outside of the corporate limits of the town, and through this line transmitted electric power, light and energy to its consumers, including the plaintiffs herein. The service to the patrons outside of the town’s limits was in a proprietary capacity. The town erected a certain primary transmission line carrying 2300 volts in the approximate direction of, and along
 
 *633
 
 the west side of State Highway No. 45. Branching off from this primary line there were various secondary circuits which ordinarily carried 110 volts, the voltage serving the secondary circuits having been reduced through a transformer. A secondary circuit originating from the above described primary line crossed Highway 45 to serve an electric water pump and a tenant house on a plantation owned by Sen. Joseph E. Ransdell. In crossing the road two wires were used, one about 12 inches above the other. Another secondary circuit connected through this same transformer ran to the residence formerly occupied by E. S. AT>elker and to the residence then occupied by S. K. Mitchiner; these two residences being on the same side of the road as the primary circuit. Another secondary circuit then crossed Highway 45 and serviced the store building owned and operated by Olivedell Planting Co. and the residence occupied by W. T. Mitchiner. All of these buildings were considerable distances apart. On the morning of January 15, 1944, about 5 o’clock a. m. all three buildings were completely destroyed by fire.
 

 Highway 45 is a State Highway carrying heavy traffic. The 2300 volt primary circuit ran parallel with this Highway for a considerable distance and particularly along the same as it traversed the plaintiffs’ properties. The record discloses that one of the secondary circuit wires crossing the highway had been broken two weeks before by a passing truck that had been hauling a dragline and a boom, and that one end of the broken wire had looped back over the primary circuit. After the insulation had eroded sufficiently for a direct contact to be made, the secondary wire became charged with 2300 volts and burned up, and the resulting contact with the wires leading to plaintiffs’ properties caused the conflagration and destruction of the buildings belonging to the plaintiffs. The only other building on the secondary line had had the current turned off sometime previously, and it did not burn.
 

 The secondary circuit wire had been broken several times before, both before and after the occurrence of the break of Jan. 1, 1944.
 
 On the date the break in question occurred the secondary wire had a clearance over State Highway 45 of only 10 feet, 8 inches, notwithstanding the fact that the minimum vertical clearance prescribed by the Louisiana Department of Highways where a transmission line crosses a State road is 20 feet above said road, and the minimum vertical clearance prescribed by the National Electric Safety Code where a transmission line crosses a public road is 18 feet.
 
 Two witnesses knew of the broken wire, one having been an eye-witness to the actual break and the other having seen it subsequently. It is said that the Power Plant Superintendent received no notice of the defect in the transmission line. None of the plaintiffs knew of the existence of the break since they continued to receive electricity. The Power Plant and distributing system op
 
 *635
 
 ■erated by the Town of Lake Providence was not equipped with any safety device such as a line fuse, a general detector, or an automatic circuit breaker.
 

 The defendant interposed as a defense to these suits the unconstitutionality of the Lawrason-Act 136 of 1898, as amended, Sec. 13, and of Act 129 of 1942, insofar as these statutes authorize municipalities to engage in enterprises of a private nature. Defendant specifically contends that the action of the municipality in operating a transmission line outside of its corporate limits is ultra vires and beyond the municipality, and that defendant cannot be held liable for any loss or damage resulting therefrom.
 

 Act No. 136 of 1898 (the Lawrason Act) originally provided for the acquisition and operation of light plants by a municipality within its corporate limits, but the amendment of 1916, Act No. 135, provides, in part as follows:
 

 “Section 13. * * *
 

 “Second- — -To purchase, accept, receive by donation or otherwise, hold, and sell or otherwise dispose of real estate and personal property within or without the corporate limits, for all proper municipal purposes, and for * * * waterworks, electric lights, sewers, and all other municipal purposes.
 

 % %
 
 H* ‡ sfc
 

 “Fourth — To purchase or erect and to own, operate and maintain electric and gas light plants, street railway or traction systems, * * * any other revenue producing proper public utility, within or. without their corporate limits and to regulate the same and to fix the rates for the consumption of the service so furnished.”
 

 The pertinent provisions of Act No. 129 of 1942 read:
 

 “Section 1
 

 “ * * *
 
 That municipal corporations
 
 in the State
 
 of Louisiana are hereby authorized to own, construct, acquire, purchase, lease, extend or improve, and operate waterworks systems, electric light and poiver plant systems, and combined waterworks and electric light and power plant systems, and any and all other properties incidental and necessary thereto; and are further authorized to sell and distribute either or both zvatcr and electricity zvithin or zvithout their corporate limits, and own, purchase, construct and extend distributing systems, pole lines and pipe lines for the purpose, and operate and maintain such properties in the interest of the public.
 

 “Section 2. That municipal corporations through their respective governing authorities, are hereby authorized to make contracts, within their discretion, extending over a period not exceeding thirty years, with other municipalities and political subdivisions for the sale or purchase of an adequate supply of water and/or electricity to meet their requirements;
 
 and municipal corporations are further authorized and empowered to own, construct, maintain and
 
 
 *637
 

 operate the necessary water pipe lines, pole lines and equipment beyond their corporate limits to obtain or furnish such a source of supply.
 

 ijc ‡ j}{ }{C >j? ijc
 

 “Section 4. That municipal corporations, through the respective governing authorities, shall have and are hereby vested with full power and authority to carry out the provisions of this Act, to expropriate lands for rights-of-way for such purposes, and to establish rates, rules and regulations with respect to the sale and or purchase of water and electricity, and to do all things which may be deemed necessary to supply their inhabitants and other consumers, as hereinabove provided for, with the benefits, convenience and advantages of water and/or electricity; and this Act shall be liberally construed to effect the purposes of its provisions and intent.
 

 “Section 5. That any or all actions or proceedings heretofore taken by any municipal corporation for the purpose of carrying out the provisions of this Act, are hereby validated, and such actions or proceedings as are incomplete may be completed under the authority granted herein.”
 
 (Italics mine.)
 

 Clearly, the provisions of the above Acts authorize the Town to serve consumers of electricity outside of the corporate limits, under the facts disclosed by this record. Our United States Supreme Court, in City of Omaha v. Omaha Water Co., 218 U.S. 180, 30 S.Ct. 615, 54 L.Ed. 991, 48 L.R.A.,N-S., 1084, forever put at rest the contention now made by defendant and the jurisprudence throughout the country is stabilized to the effect that municipal corporations can serve consumers of water and electricity outside of the corporate limits.
 

 The attack on Act 136 of 1898, as-amended by Act 135 of 1916, is general. It does not particularize the charge and is, therefore, not within conformity of our law, because one who pleads the unconstitutionality of a statute must specify the Article and Section of the Constitution that has been offended. Pugh v. Police Jury of Livingston Parish, 196 La. 1025, 200 So. 450, State v. Hudson, 162 La. 543, 110 So. 749, 750. These decisions rest in the fact that the constitutionality of a statute is presumed and the burden of proof is on the litigant, who asserts to the contrary,, to point out with utmost clarity wherein the Constitution of the State or Nation has been offended by the terms of the statute attacked.
 

 For the reasons given above, we will not consider the general and indefinite charges of unconstitutionality of Act 129 of 1942, but will content ourselves to that part of the attack where it is claimed that the particular Section of the Article of the Constitution has been violated. The defendants have specified Section 15 of Article IV. This Article of the Constitution relates to ex post facto laws, impairment of the obligation of contracts, and the di
 
 *639
 
 vesting of vested rights. Since the proceedings here are civil and the constitutional provisions as to ex post facto laws relate entirely to criminal cases, that contention here has no merit. See Watson v. Mercer, 8 Pet. 88, 8 L.Ed. 876, and State ex rel. Labauve v. Michel, 121 La. 374, 46 So. 430.
 

 The provisions of our Constitution relating to the impairment of the obligations of contracts only apply to contracts or vested rights of individuals or private corporations. They do not apply to municipal corporations for the reason that they are entirely subject to legislative will. Police Jury of Bossier v. Corporation of Shreveport, 5 La.Ann. 661; Crescent City Gaslight Co. v. New Orleans Gas Light Co., 27 La.Ann. 138; Moore v. City of New Orleans, 32 La.Ann. 726. It is also significant that no taxpayer is before the court; that no inhabitants can have a vested right in the government of a municipality because grants are not contracts but are ordinary acts of the Legislature. City of Gretna v. South New Orleans Light & Traction Co., 4 La.App. 480; Arnoult v. City of New Orleans, 11 La.Ann. 54, Moore v. City of New Orleans, 32 La.Ann. 726 and Reynolds v. Baldwin, 1 La. 162.
 

 It is also contended that the Act of 1942 offends section 3 of Article IV of the Constitution of 1921. This Article reads: “The Legislature shall have no power to grant or authorize any parish or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor, nor pay, nor authorize the payment of, any claim against the State or any parish or municipality thereof, under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void.”
 

 The mere statement of this cause of action considered in connection with the above quoted Article of the Constitution will disclose that this suit is not based on a contract but is one in damages and so, therefore, this contention is without merit.
 

 Another contention made by the defendant is as to the wisdom or propriety of the statute in question. This is a matter which addresses itself exclusively to the Legislature not the courts. Ricks v. Department of State Civil Service, 200 La. 341, 342, 8 So.2d 49.
 

 Defendant finally contends that certain evidence was excluded and certain amendatory papers were not permitted to be filed. The record discloses that this matter was brought up in a motion for a new trial, which motion was filed about 14 months after the trial was had on the merits and in which motion the defendant sought to supply an additional defense — that of contributory negligence. In an unbroken line of decisions, our jurisprudence has preserved the stability of our law on this point. That line of decisions begins in Long v. Robinson, 5 La.Ann. 627. There, the court held that “A party cannot get a new trial, upon the
 
 *641
 
 ■ground of newly discovered evidence which would prove a fact not alleged by him in his pleadings, and of which he must have been aware before the trial.” Such is the law today.
 

 A review of the authorities cited by the ■defendant in its brief discloses that they are not applicable to the instant case, either because of the great variance of facts or because of the lack of some grant of authority to the municipality by the Legislature.
 

 The judge of the district court in an able opinion found for the three plaintiffs. After a careful review of the record, we find that there is nothing to show that his conclusions on the facts are manifestly erroneous. The burden of proof of showing that there is an error of fact rests upon the defendant. This it did not show. The matter of substance on the charge of negligence is that the Town of Lake Providence maintained its secondary distribution system across State Highway 45 with a vertical clearance of only 10 feet 8 inches (The National Electrical Safety Code requires a minimum vertical clearance of 18 feet and the Highway Department requires a minimum of 20 feet clearance where a transmission line, crosses a public road.) that the Town was negligent in failing to ascertain that this secondary wire was broken and lying across the highly charged primary circuit; and that this dangerous condition existed for 2 weeks prior to the conflagration.
 

 As to the holding of liability on the part of the defendant, we are in accord with the finding of the district judge that the several breakings should have definitely served to warn defendant that something was wrong; that these wires were improperly strung across the road, and were potentially dangerous. The failure of defendant to foresee the danger of this condition indubitably constituted negligence.
 

 In 29 C.J.S., Electricity, § 47, at pps. 594, 596, we find:
 

 “An electric company is under a duty to make reasonable and prompt inspection of its wires and appliances; and, where the defect does
 
 not
 
 arise from an electric company’s negligence, its liability turns on whether it knew, either actually or constructively, of the dangerous condition in time, by the exercise of reasonable care, to have avoided the injury.
 

 “ * * * The reasonableness of the inspection depends, not only on the condition of the line, but also on the nature of the danger to be feared. * * *
 

 “Where the dangerous condition causing injury results from defendant’s negligence, it is immaterial whether defendant has notice thereof. Where a dangerous condition is not caused by negligence, the company is not liable for resulting injuries unless it fails to remedy such conditions within a reasonable time after actual or constructive notice, but it is entitled only to a reasonable time.”
 

 
 *643
 
 In Mays v. Southwestern Gas & Electric Co., 174 La. 368, 140 So. 826, 827, we stated: “Where one is engaged in the manufacture and distribution of an inherently dangerous agency, he is charged with the duty of exercising the utmost degree of caution, to the end that harm may not come to others.”
 

 In Hebert v. Lake Charles Ice, Light & Waterworks Co., 111 La. 522, 35 So. 731, 734, 64 L.R.A. 101, 100 Am.St.Rep. 505, this court quoted, with approval, the following from the case of Mitchell v. Raleigh Elec. Co., 129 N.C. 166, 39 S.E. 801, 55 L.R.A. 398, 85 Am.St.Rep. 735 : “ * * * In adhering to the wire, electricity gives no warning or knowledge of its deadly presence. Vision cannot detect it. It is without color, motion, or body. Latent, and without sound, it exists, and, being odorless, the only means of its discovery lies in the sense of feeling communicated through the touch, which, as soon as done, becomes its victim. In behalf of human life and the safety of mankind generally, it behooves those who would profit by the use of this subtle and violent element of nature to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition.”
 

 In Bynum v. City of Monroe, La.App., 171 So. 116, 118, it was stated: “Electricity is a subtle agency and ofttimes freakish in the accomplishment of direful results. ‘Its true nature is not understood. But it is recognized as an invisible force with highly dangerous characteristics.’ 20 Corpus Juris, 305. It is because of its subtleness and dangerous characteristics that the law requires of those supplying it to the public or using it in such way that the public may be injured therefrom, the highest possible degree of care and caution to the end that injury to persons and property may be reduced to a minimum, if not made entirely impossible.”
 

 In Ledet v. Lockport Light & Power Co., 15 La.App. 426, 132 So. 272, 274, the Court of Appeal, First Circuit, said:
 

 “From between 1 and 2 o’clock p. m. on August 5, 1927, about the time the wire was first observed to he broken, until, say, about 5 o’clock p. m. on August 6, 1927, which was about the time when plaintiffs’ son was killed, there elapsed nearly 30 hours, during which period of time the defendant was not aware that its wire had broken and was hanging on a fence near the ground, adjoining the highway in a thickly populated community, charged with a deadly voltage and within reach of anybody who might take hold of it, and along which way grown people and children were passing.
 

 “It is not easy to find a good excuse for leaving such a danger, for such a length of time, where it was so likely to he encountered almost every hour of the day it was there.”
 

 The evidence in the record is conclusive of the fact of negligence on the part of the Town of Lake Province. The plaintiffs need not rely on their additional plea of res ipsa loquitur.
 

 
 *645
 
 The judgments of the learned district judge with respect to the interest allowed in these three suits will be amended by providing that interest be awarded from date of judicial demand.
 

 For the reasons assigned, the judgments of the district court are amended by awarding interest to each of the plaintiffs herein from date of judicial demand, and, in all other respects, the judgments as thus amended, are affirmed, at appellant’s costs.