# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-64


KAITLYN LEBOUEF AGUILLARD

VERSUS

CALEB K. AGUILLARD


**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 18-C-5082-A
HONORABLE JAMES PAUL DOHERTY, JR., DISTRICT JUDGE

**********

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Candyce G. Perret, and Jonathan W. Perry, Judges.

**EXCEPTION OF RES JUDICATA DENIED;
JUDGMENT AFFIRMED.**


**Dyan Schnaars
3639 Ambassador Caffery
The Petroleum Tower – Suite # 333
Lafayette, LA 70503
Telephone: (337) 534-4326
COUNSEL FOR:**
    **Plaintiff/Appellee – Kaitlyn LeBouef Aguillard**

**Geralyn Siefker
210 West Main StreetA
Lafayette, LA 70501
Telephone: (337) 210-5986
COUNSEL FOR:**
    **Plaintiff/Appellee – Kaitlyn LeBouef Aguillard**

**Caleb K. Aguillard**
**141 South Sixth Street**
**Eunice, LA 70535**
**Telephone: (337) 457-9331**
**COUNSEL FOR:**
     **Defendant/Appellant – Caleb K. Aguillard**

**THIBODEAUX, Chief Judge.**

This case arises from Kaitlyn LeBouef's[1] (LeBouef) First Amended and Supplemental Petition for Divorce pursuant to Louisiana Civil Code Article 103(5) with Minor Child seeking incidental relief pursuant to La.R.S. 9:372. Caleb K. Aguillard[2] (Aguillard) appeals the trial court's judgment granting a protective order to his former spouse, LeBouef, and asserts a Peremptory Exception of Res Judicata pursuant to La.Code Civ.P. art. 2163 and La.R.S. 13:4231. For the following reasons, we deny Aguillard's Peremptory Exception of Res Judicata and affirm the trial court's judgment.

## I.

## ISSUES

We must decide:

(1)   whether LeBouef's action is barred by res judicata;

(2)   whether the trial court abused its discretion by granting a permanent injunction in favor of LeBouef;

(3)   whether the trial court committed an error by failing to apply an adverse inference against LeBouef;

(4)   whether the trial court committed a legal error by considering evidence not in the record of an October 22, 2019 hearing;

(5)   whether the trial court committed legal error by granting relief that was not procedurally available to LeBouef; and

---

[1]Formerly Kaitlyn LeBouef Aguillard.

[2]Aguillard, an attorney, has represented himself throughout these proceedings.

     (6)    whether the trial court's order is unconstitutional.

II.

**FACTS AND PROCEDURAL HISTORY**

LeBouef and Aguillard were married in February 2017 and had one child, J.F.A.,[3] born on September 26, 2017. On November 16, 2018, LeBouef filed for divorce under La.Civ.Code art. 102.[4] In her petition, LeBouef requested that the parties be awarded joint custody of the child with her being designated as the domiciliary parent and with Aguillard having reasonable supervised visitation pending completion of a hair-follicle drug test screening and evaluation for substance abuse. LeBouef also sought child support, exclusive use of the family home, and other incidental requests.

Aguillard filed an answer and reconventional demand on December 4, 2018, requesting the parties be awarded joint custody of the child with him having frequent visitation. In addition to other incidental requests, Aguillard sought exclusive use of the family home; interim spousal support; issuance of a temporary restraining order (TRO) prohibiting LeBouef from alienating any community assets, borrowing against or changing beneficiaries of life insurance policies; and issuance of a TRO against LeBouef pursuant to La.R.S. 9:372.1, prohibiting harassment through direct or indirect contact with Aguillard's family or former family members.

The parties signed a Consent Judgment on March 1, 2019, settling issues concerning the use of the family home, child support, interim spousal support,

---

[3]Initials are used to ensure the confidentiality of minors. Uniform Rules—Courts of Appeal, Rule 5-2.

[4]The parties are now divorced by judgment dated November 15, 2019.

and separation of community property. On March 6, 2019, the parties also entered into a Stipulated Joint Custody Implementation Plan and a Community Property Partition Agreement, and a Judgment of Partition was signed by the trial court.

After the hearing officer conference on May 2, 2019, LeBouef filed a Petition for Protection from Abuse pursuant to La.R.S. 46:2131-2143, charging Aguillard with domestic abuse. LeBouef alleged physical abuse, sexual abuse, stalking on social media, and verbal intimidations, which included Aguillard threatening to accuse LeBouef of physically abusing A.E.A. and N.K.A.[5] LeBouef was granted an ex parte TRO and the matter was scheduled for conference before a hearing officer. *See* La.R.S. 46:2135(A) and (I). After Aguillard was ordered to show cause why the TRO should not be converted to a protective order, he obtained an order to forego a hearing before a hearing officer.

Trial on LeBouef's Petition for Protection from Abuse was held on June 28, 2019 and July 9, 2019. During trial, LeBouef presented testimony from her father, Bernard LeBouef; two officers from the Eunice Police Department, Lieutenant Michael Dunn and Officer Jack Ardoin; and a licensed social worker, Jennifer Glasscock.

Lieutenant Michael Dunn worked with Aguillard at the Eunice Police Department. Lieutenant Dunn testified that he never personally witnessed Aguillard threaten LeBouef, nor did he recall ever being contacted by LeBouef to report Aguillard being violent or threatening violence.

---

[5]A.E.A. and N.K.A. are the minor children from Mr. Aguillard's previous marriage.

On cross-examination, Lieutenant Dunn was asked whether he trusted Aguillard to carry a loaded fireman when they worked together on a daily basis. Lieutenant Dunn answered, "Up to a certain point[.]"

On re-direct examination, Lieutenant Dunn clarified his answer, testifying he did not fully trust Aguillard because of a theft that occurred and his opinion Aguillard was intoxicated at work. Lieutenant Dunn estimated it was May 2018 when Aguillard was told to voluntarily resign from the Eunice Police Department in lieu of criminal charges.

Officer Jack Ardoin testified he also worked with Aguillard at the Eunice Police Department. He recalled going to LeBouef's residence in November 2018, and advising LeBouef to contact the Eunice City Marshal's Office if she became concerned with Aguillard's behavior upon his return home from inpatient rehab in Mississippi. Officer Ardoin recalled LeBouef being fearful. He was also called to LeBouef's residence only a week earlier, after LeBouef's father reported a suspicious package was found in her mailbox.

On cross-examination, Officer Ardoin acknowledged there was no evidence linking Aguillard to the suspicious package. He also testified he never witnessed Aguillard commit domestic violence, and he acknowledged Aguillard advocated for victims of domestic violence in his job as a police officer. Officer Ardoin and Aguillard attended the police academy together, and Aguillard held the position of class president.

On re-direct examination, Officer Ardoin acknowledged a movement to impeach Aguillard from the position of class president. However, he did not recall on what grounds individuals sought to remove Aguillard.

4

Jennifer Glasscock was accepted by the trial court as a licensed clinical social worker with the ability to treat domestic violence victims. LeBouef began seeing Ms. Glasscock on August 2, 2018, for marriage counseling. Ms. Glasscock testified that LeBouef told her Aguillard had choked her, and she was fearful of him. Ms. Glasscock diagnosed LeBouef with acute stress disorder, exhibiting symptoms of overwhelming fear, anxiousness, depression, and fear of harm, both physical and psychological. She opined LeBouef was a victim of domestic violence and explained the abuse affected LeBouef's sense of worth, giving her a sense of powerlessness, helplessness, and overwhelming fear. She observed LeBouef had difficulty falling asleep and staying asleep, decreased appetite, and a sense of guilt which she testified was a result of gaslighting. Ms. Glasscock defined gaslighting as:

> A psychological form of abuse in which the perpetrator places seeds of doubt and insecurity in the victim and turning – turning reality into – into a falsehood, redirecting with lies and manipulation, intimidation through these methods and leaving the victim unsure, uncertain, insecure about what is – what is real, what is true.

According to Ms. Glasscock, her treatment has focused on stabilizing LeBouef's sense of safety and helping her with managing panic attacks.

On cross-examination, Ms. Glasscock testified it is her job to treat claims of abuse; it is not her job to substantiate claims of abuse. Ms. Glasscock acknowledged LeBouef has anger issues, but also noted LeBouef demonstrated a self-awareness thereof. Also, Ms. Glasscock testified she found LeBouef's anger to be a natural human response to the sense of powerlessness and to being overpowered.

LeBouef's father, Bernard, testified that LeBouef told him of three incidents of Aguillard's abuse. The first occurred when Aguillard choked LeBouef and the second occurred when Aguillard hit LeBouef and left a bruise on her leg. He stated Aguillard called him the morning after hitting LeBouef. He was crying, claiming self-defense, and professing remorse. Mr. Bernard testified the third instance of abuse LeBouef reported to him was the first time Aguillard sexually assaulted her.

During her testimony, LeBouef recounted several incidents of abuse she alleged happened during her twenty-one-month marriage to Aguillard. The trial court also accepted excerpts from LeBouef's handwritten journal, wherein she memorialized her relationship with Aguillard. According to LeBouef: on March 14, 2017, within a month of their marriage, Aguillard grabbed her by the throat, immobilized her, and screamed in her face; on November 13, 2017, before she was fully recovered from child birth in September 2017, Aguillard forcibly restrained and sexually assaulted her; on November 23, 2017, Aguillard forced her to have sex; on May 2, 2018, Aguillard used his foot to kick LeBouef and their infant out of bed because he was awakened by the infant's cries to be fed; on June 24, 2018, Aguillard struck LeBouef's upper right arm with his fist while she held their sleeping infant; and on July 23, 2018, Aguillard struck LeBouef with his open palm on LeBouef's right thigh. LeBouef explained, "I swatted his right arm like, 'Oh, boy, be quiet,' something along those lines and he lost it and as hard – as he as hard as he could, he hit me with an open hand on my leg and knocked the wind out of me." LeBouef testified Aguillard began blaming her, claiming she hit him in the face, claiming he recorded her admitting she hit him first, and bragged that no one would believe her because he is friends with the cops and the city judge, and his father is an attorney.

LeBouef photographed her leg and sent a copy of the picture to a friend. The photograph was introduced into evidence.

Twelve days later, on August 4, 2018, LeBouef called Aguillard's parents to pick him up because, for the second time in a matter of months, he had been terminated from his job. Aguillard was brought to an inpatient rehabilitation center while his two children, A.E.A. and N.K.A., remained with LeBouef. LeBouef brought A.E.A. and N.K.A. to Aguillard's parents' home before she filed for divorce on November 16, 2018.

LeBouef testified Aguillard was often intimidating. He would regularly say, "I am the law," remind her of his status as an attorney and a police officer, and display weapons, i.e., guns, knives, and swords, to frighten her. She recalled an argument when Aguillard pointed a loaded gun just above her head and laughed when she became silent. Aguillard also reportedly boasted it would be futile for LeBouef to report his bad behavior because he knew everyone, his family had clout in the community, and she would never be believed.

LeBouef felt she was being watched by Aguillard. She testified that during their marriage, Aguillard created fake social media accounts to follow both his ex-wife, with whom Aguillard had ongoing custody issues concerning A.E.A. and N.K.A., and his ex-wife's boyfriend, John Chatman. LeBouef suspected Aguillard was behind her recent receipt of multiple friend requests on social media. She also suspected Aguillard attempted to access her Apple account in late-May 2019. LeBouef received an email from Apple Support, notifying her of unusual activity on her Apple account. She had not released her Apple ID or password to anyone other than him. In January 2019, LeBouef saw Aguillard watching her while

he drove slowly past her home. She stated she was fearful of Aguillard's behavior to the point that she moved back into her parents' home with J.F.A.

Under cross-examination, LeBouef conceded there had been no physical abuse by Aguillard since their physical separation on August 4, 2018; however, she maintained Aguillard stalked and harassed her since their separation. LeBouef denied being comfortable with Aguillard and repeatedly meeting him with no one else present.

When questioned why she agreed to sign the Consent Judgment in March 2019, LeBouef testified she did so because Aguillard's drug screenings were negative and because her attorney advised "I was not going to be able to keep you [Aguillard] from seeing your daughter,…unfortunately, it would take [J.F.A.] physically being harmed[.]" Next, questioning LeBouef's motive for filing a petition for protection in May 2019, Aguillard asked, "What happened in March [2019] that made your attitude toward me radically change?" LeBouef denied filing her petition for protection in retaliation, stating Aguillard began in January 2019 declaring his children had been abused by LeBouef while he was not living at home from August to November 2018. LeBouef also denied she was told by Ms. Glasscock to file her petition for protection. LeBouef's counsel objected when Aguillard asked, "It sounds like you filed a Petition for Protection from Abuse after therapy and what you say you remember and not because of anything that's been going on at the time?" The trial court announced:

> Here is what the Court takes from what's been said so far. What she said was she didn't realize the problem that she had until she went through therapy. The therapist helped her to realize what was going on in her life and it was at that point she decided to file. That's what the Court's finding is and I'll adopt that as my finding so far based upon the evidence that I've heard.

Finally, Aguillard addressed LeBouef's journal, primarily focusing on a discrepancy between LeBouef's petition for protection, which alleged Aguillard choked LeBouef on March 14, 2017. Aguillard suggested LeBouef manufactured the notebook and changed the date of the incident after he pointed out he was physically incapable of mistreating LeBouef in this manner because he had open heart surgery on February 10, 2017. LeBouef explained she simply misstated the date because she did not have the journal with her when she wrote the allegations in her petition for protection. She insisted that a month after surgery, Aguillard was physically capable of normal activities.

After the hearing, the trial court granted an 18-month Protective Order in LeBouef's favor. A standard LPOR[6] 9 form Order of Protection was signed by the trial court on July 10, 2019.

Aguillard filed a devolutive appeal. This Court affirmed the trial court's judgment and concluded that a reasonable factual basis existed that LeBouef's charges of physical, sexual, and psychological abuse at the hands of Aguillard were supported by the record. *Aguillard v. Aguillard*, 19-757 (La.App. 3 Cir. 7/8/20), ___ So.3d ___.

On July 15, 2019, LeBouef filed an amending and supplemental petition for divorce seeking, among other relief, a permanent injunction pursuant to La.R.S. 9:372. On October 22, 2019, a hearing was held on the merits of LeBouef's request for a divorce and the permanent injunction. The trial court granted LeBouef's cause of action for divorce and a permanent injunction pursuant to La.R.S. 9:372.

---

[6]LPOR is the acronym for Louisiana Protective Order Registry.

On November 15, 2019, the trial court signed a standard LPOR Order of Protection in connection with the ruling. Aguillard thereafter devolutively appealed the issuance of the second order of protection under La.R.S. 9:372.

III.

**STANDARD OF REVIEW**

A trial court is granted wide discretion in the issuance of protective orders. *Ned v. Laliberte*, 18-999 (La.App. 3 Cir. 6/26/19), 277 So.3d 517. A court of appeal reviews the issuance of domestic abuse protective orders for abuse of the trial court's discretion. *Fontenot v. Newcomer*, 10-1530, 10-1531 (La.App. 3 Cir. 5/4/11), 63 So.3d 1149. The trial court's finding of fact, including its assessment of the weight of the evidence, evaluation of the demeanor of the witnesses, and credibility determination, may not be disturbed on appeal absent manifest error. *Craig v. Bishop*, 19-166 (La.App. 3 Cir. 10/23/19), 283 So.3d 521; *Cummings v. Bishop*, 19-168 (La.App. 3 Cir. 10/23/19), 283 So.3d 507. To reverse the trial court's factual determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes the finding is clearly wrong. *Rabalais v. Nash*, 06-999 (La. 3/9/07), 952 So.2d 653. "Where the [fact-finder's determinations] are reasonable, in light of the record viewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result[.]" *Id.* at 657.

However, "when a trial court applies incorrect legal principles and these errors materially affect the outcome of the case and deprive a party of substantial rights, legal error occurs." *Vidrine v. Vidrine*, 17-722, p. 8 (La.App. 3 Cir. 5/2/18),

245 So.3d 1266, 1274 (citing *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731). When a trial court commits legal error, "the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence." *Evans*, 708 So.2d at 735.

## IV.

## <u>LAW AND DISCUSSION</u>

### *<u>Peremptory Exception of Res Judicata</u>*:

**Whether LeBouef's action is barred by res judicata.**

On August 5, 2020, Aguillard filed a Peremptory Exception of Res Judicata with this court pursuant to La.Code Civ.P. art. 2163 and La.R.S. art. 13:4231. However, the specific wording of La.R.S. 46:2134(E) negates Aguillard's argument and addresses the issue of *res judicata* directly.

Louisiana Revised Statutes 46:2134(E) (emphasis supplied) states in relevant part:

> If a suit for divorce is pending, any application for a protective order shall be filed in that proceeding and shall be heard within the delays provided by this Part. Any decree issued in a divorce proceeding filed subsequent to a petition filed or an order issued pursuant to this Part may, in the discretion of the court hearing the divorce proceeding, supersede in whole or in part the orders issued pursuant to this Part. Such subsequent decree shall be forwarded by the rendering court to the court having jurisdiction of the petition for a protective order and shall be made a part of the record thereof. *The findings and rulings made in connection with such protective orders shall not be res judicata in any subsequent proceeding*.

Here, the suit for divorce was pending when LeBouef filed an amending and supplemental petition for divorce subsequent to the trial court's order of Title 46

protection. LeBouef's amending and supplemental petition for divorce sought a second injunction for protection under La.R.S. 9:372. It was within the trial court's discretion to grant the second injunction and supersede the first injunction ordered.

Therefore, the July 15, 2019 amending supplemental petition for divorce seeking a second injunction prohibiting abuse cannot be subject to *res judicata* with respect to the October 22, 2019 divorce proceeding. The trial court had the authority to grant the second injunction according to the specific language of La.R.S. 46:2134(E).

However, we choose to buttress our conclusion of the directive of La.R.S. 46:2134(E), by examining the assertions and merits of Aguillard's exception of *res judicata*. Aguillard argues that LeBouef's amending petition attempts to relitigate the issue of protection from abuse based upon the same alleged facts, information and evidence that LeBouef alleges were in existence, and litigated at the time of the first trial on her request for a Title 46 protective order. Further, Aguillard alleges that LeBouef's second protective order pursuant to La.R.S. 9:372 is founded on the same alleged facts, demands the same thing, and is between the same parties as the prior cause of action for her first protective order. We disagree.

The Title 46 protective order and the Title 9 protective order are not demanding the same thing. The Title 9 protective order is a different cause of action. Title 46 is a remedy in law, but it is preliminary and expires on January 10, 2021. Title 9 is different because it is permanent, i.e., it does not expire.

Moreover, Title 9 and Title 46 are different because of who they provide protection to. Title 9 grants an injunction prohibiting a *spouse* from physically or sexually abusing the other *spouse* or a child of either of the parties. Whereas Title 46 grants an injunction for protection to anyone who has a particular

12

relationship to each other; it is not limited to marital status. In this case, Title 9 is the proper injunction to be sought, LeBouef and Aguillard were spouses at the time of LeBouef's demand for protection under Title 9.

Thus, Aguillard's peremptory exception of *res judicata* is hereby denied.

**Whether the trial court abused its discretion by granting a permanent injunction in favor of LeBouef.**

La.R.S. 9:372(A) states, "In a proceeding for divorce, a court may grant an injunction prohibiting a spouse from physically or sexually abusing the other spouse or a child of either of the parties." The provisions of the statute contain no specification of the applicable burden of proof, or what showing at a hearing on the merits is necessary in order to obtain relief. However, we do not agree with Aguillard's assertion that the requirements of La.Code Civ.P. art. 3601 should be applied. Article 3601 addresses issues other than spousal abuse during the pendency of the marriage.

Aguillard argues that the trial court abused its discretion because it applied the wrong legal standard to determine if LeBouef was entitled to the permanent injunction under Title 9. Aguillard asserts that LeBouef should have to prove a "need" for an injunction to issue in the form of immediate and irreparable harm; and that she must prove it through evidence other than uncorroborated testimony. In support of this assertion, Aguillard cites *Green v. Green*, 19-37 (La.App. 5 Cir. 12/11/19), 286 So.3d 1103. In *Green*, the fifth circuit opined that the trial court was justified in holding a petitioner under La.R.S. 9:372.1, after a divorce has been granted, to the standard for issuance of an injunction found at La.Code Civ.P. art. 3601. However, *Green* is distinguishable because the parties in

*Green* had been divorced for over a year at the time the petitioner requested a permanent injunction under Title 9. There was no proceeding for divorce pending. Therefore, the showing of immediate and irreparable harm was necessary. Here, LeBouef requested relief under Title 9 during the pendency of the divorce proceedings. The trial court found that LeBouef carried her burden of proof through the evidence provided.

We do not agree with Aguillard's assertion that LeBouef should be held to the "immediate and irreparable harm" standard. Therefore, we find that the trial court did not abuse its discretion in granting a permanent injunction in favor of LeBouef.

**Whether the trial court committed an error by failing to apply an adverse inference against LeBouef.**

While appellate courts in Louisiana can exercise plenary and supervisory powers, the scope of our appellate consideration is generally limited to specifications of errors and issues that were presented to the trial court "unless the interest of justice clearly requires otherwise." This issue was never presented to the trial court and the "interest of justice" caveat does not apply in this case. We, therefore, decline to address this issue *See* Rule 1-3 Uniform Rules—Courts of Appeal.

**Whether the trial court committed a legal error by considering evidence not in the record of the October 22, 2019 hearing.**

Aguillard asserts that the trial court committed a legal error when it considered evidence not in the record at the October 22, 2019 hearing. However, we disagree. Under La.Code Evid. art. 201, a court may take judicial notice of adjudicative facts, whether requested or not. A judicially-noticed fact must be one

not subject to reasonable dispute in that it is either "generally known within the territorial jurisdiction of the trial court;" or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." La.Code Evid. Art. 201. Aguillard argues that the trial court did not provide notice of its use of judicial notice. However, La.Code Evid. art. 201 does not require the trial court to give notice that it will take judicial notice of evidence provided at previous hearings.

It is clear from the trial court record that LeBouef presented evidence of at least eight separate incidents of assault against her during her marriage to Aguillard. The trial court had previously found evidence to support the issuance of a temporary injunction in favor of LeBouef against Aguillard. Furthermore, the previous hearings were heard by the judge presiding over the October 22, 2019, divorce proceeding and injunction hearing. The trial court had the authority to take judicial notice of the evidence previously presented and part of the public record.

**Whether the trial court committed legal error by granting relief that was not procedurally available to LeBouef.**

A hearing on the merits of LeBouef's amended petition for divorce and an injunction pursuant to La.R.S. 9:372 was conducted on October 22, 2019. After addressing the related matters, the trial court took up the cause of action for divorce and granted relief. Aguillard argues at that point, there was no longer a "proceeding for divorce" within the meaning of La.R.S. 9:372 and the parties were no longer "spouses" by virtue of the trial court granting the divorce seconds before discussing the injunction. Aguillard cites *Lawrence v. Lawrence*, 02-1066 (La.App. 3 Cir. 3/5/03), 839 So.2d 1201, to support his argument. However, the factual timeline of *Lawrence* does not coincide with the factual timeline of this suit. In *Lawrence*, the

15

parties were divorced for over three years before the trial court granted the permanent injunction. The divorce proceeding in *Lawrence* had concluded at the time the former Mrs. Lawrence filed for the permanent injunction.

Conversely, LeBouef filed for the permanent injunction during the pendency of the divorce proceeding. The petition for divorce pursuant to La.Civ.Code art. 103(5) and the judgment of divorce in this case included the language required to continue the injunction permanently. Aguillard was given proper notice of LeBouef's intent to seek the Title 9 injunction which was later discretionarily granted by the trial court.

Therefore, we find that Aguillard's application of the procedural language in La.R.S. 9:372 to be incorrect. The trial court was within its discretion to grant the Title 9 injunction.

**Whether the trial court's order is unconstitutional.**

Aguillard argues that the order of the trial court unconstitutionally infringes upon his inalienable rights. Specifically, he asserts that the order should be struck down as unconstitutional. Every statute is presumed constitutional and the court must uphold the constitutionality of a statute if it is reasonable to do so. *Interstate Oil Pipe Line Co. v. Guilbeau*, 217 La. 160, 46 So.2d 113 (La.1950). Although Aguillard states in brief that he is "not arguing the constitutionality of a statute" we opine that he is. Aguillard is, however, not following the proper procedure for attacking the constitutionality of a statute.

In *Olivedell Planting Co. v Town of Lake Providence*, 217 La. 621, 632, 47 So.2d 23, 27 (La.1950), the Supreme Court of Louisiana stated, "[T]he burden of proof is on the litigant, who asserts to the contrary, to point out with utmost clarity wherein the Constitution of the State or Nation has been offended by the terms of

16

the statute attacked." According to *Vallo v. Gayle Oil Co., Inc.*, 94-1238 (La. 11/30/94), 646 So.2d 859, a party must raise the unconstitutionality of a statute in the trial court, then the unconstitutionality of the statute must be specifically pleaded and the grounds outlining the basis of unconstitutionality must be particularized. Furthermore, the constitutionality of a statute cannot be considered for the first time on appeal. *Stubbs v. Bain*, 173 La. 544, 138 So. 96 (La.1931). Aguillard has not pled the constitutionality of the statute nor the trial court's order in the trial court. The first time the issue of constitutionality was addressed was in Aguillard's brief to this court.

Therefore, we find that Aguillard has not followed proper procedure for attacking the constitutionality of La.R.S. 9:372.

V.

## CONCLUSION

For the foregoing reasons, the trial court did not abuse its discretion in granting LeBouef's request for permanent injunction pursuant to La.R.S. 9:372. We find a reasonable factual basis exists for the finding of the trial court that LeBouef's charges of physical, sexual, and psychological abuse by Aguillard are reasonably supported.

Therefore, the judgment of the trial court is affirmed. The costs of this matter are assessed to the Appellant, Caleb K. Aguillard.

**EXCEPTION OF RES JUDICATA DENIED; JUDGMENT AFFIRMED.**